## SERVICE CHEVROLET *v.* Doug ATWOOD

CA 97-618                                  966 S.W.2d 909

Court of Appeals of Arkansas
Division I
Opinion delivered April 8, 1998

*Walter A. Murray*, for appellant.

*David E. Smith*, for appellee.

D. FRANKLIN AREY, III, Judge. The Workers' Compensation Commission found that the appellee, Douglas Atwood, sustained a compensable injury to his left eye. The appellant, Service Chevrolet, was found to be responsible for appellee's medical treatment and expenses; the Commission approved reservation of the issue of appellee's permanent disability pending additional treatment. Appellant argues on appeal that the Commission's decision is not supported by substantial evidence, and that the Commission erred by reserving the issue of permanent disability for later determination. We affirm.

In determining the sufficiency of the evidence to sustain the Commission's findings, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; rather, the extent of our inquiry is to determine if the Commission's findings are supported by substantial evidence. *See Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

In making our review, we recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Whaley v. Hardee's*, 51 Ark. App. 166, 912 S.W.2d 14 (1995). The Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *McClain v. Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989). The testimony of medical experts is an aid to the Commission in its duty to resolve issues of fact. *Id.* It is the responsibility of the Commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted, and when it does so, its findings have the force and effect of a jury verdict. *Id.*

Appellant employed appellee to detail cars. On January 30, 1995, appellee was spraying cleaner on the wheel of a car when a drop of the cleaner splashed into his left eye. Appellee immediately washed his eye with water but did not report the incident at that time. Appellee testified that he began to experience difficulties with his left eye approximately one week after the incident. His initial symptoms included redness, swelling, watering, and matting of the left eye. Appellee eventually reported the incident because these symptoms persisted.

John McDonald, appellant's service manager, testified that sometime after January 30, 1995, appellee informed him that he had splashed the tire cleaner in his eye, and that his eye was burning. McDonald advised appellee to go to the office, fill out a workers' compensation report, and go see his doctor. An injury report was completed on February 20, 1995, suggesting that appellee first reported the incident approximately three weeks after it occurred.

Appellee was referred by his initial treating physician to Dr. Susan Blair, an ophthalmologist. She first saw appellee on May 12, 1995. Her report noted that appellee experienced problems with his eye since the time of the injury, and that he experienced watering, redness, swelling, and decreased vision in his left eye. Dr. Blair prescribed non-steroidal, anti-inflammatory eye drops.

She subsequently noted that the redness, pain, and swelling in the left eye improved.

Visual acuity testing indicated that appellee's vision was 20/20 in the right eye and 20/40 in the left eye. Dr. Blair referred appellee for a corneal topography at UAMS, which confirmed irregular astigmatism in the cornea of appellee's left eye as compared to a normal topography of appellee's right eye.

In a report dated August 4, 1995, Dr. Blair noted appellee's reported history of splashing wheel cleaner in his left eye. She observed that she did "not have a record of what medical evaluation was completed at the time of the initial injury." She diagnosed irregular corneal astigmatism in appellee's left eye accounting for his mild decrease in visual acuity in that eye. She continued:

> An ophthalmologic exam before and immediately after the injury would be needed to clearly associate the injury with this. Certainly, an acidic solution such as wheel cleaner can cause irregular corneal astigmatism like what is present in Mr. Atwood's eye.

The Commission concluded that appellee proved by a preponderance of the evidence each of the requirements necessary to establish a compensable injury. It noted the objective findings by Dr. Blair and her observations of redness and swelling, as well as the abnormality indicated by the corneal topography. The Commission further noted that appellee consistently related his left eye problems to a chemical injury sustained on January 30, 1995; that both appellee and Dr. Blair indicated that the wheel cleaner was an acidic solution; and that Dr. Blair opined that an acidic solution such as the wheel cleaner can cause irregular corneal astigmatism like that present in appellee's left eye.

■ ■ Appellant first argues that appellee did not prove that he sustained a compensable injury under Ark. Code Ann. § 11-9-102(5)(A)(i) (Supp. 1997). In support of this argument, appellant contends that appellee failed to report his injury in a timely fashion and failed to seek medical treatment in a timely fashion. These arguments go to the weight and credibility of the testimony, and these matters are exclusively within the province of the Commission. *See Stephens Truck Lines*, 58 Ark. App. at 278,

950 S.W.2d at 474. The statutory definition of a compensable injury does not require timely reporting of an injury, or receipt of medical treatment within a specified period. *See* Ark. Code Ann. § 11-9-102(5)(A)(i).

██ ██ Appellant next argues that the Commission's opinion is based upon speculation and conjecture, because appellee did not introduce certain medical records, nor did he introduce evidence of the toxicity of the wheel cleaner. These arguments fail to recognize that it is the Commission's function to determine the credibility of appellee, and the weight to be given to his testimony concerning his medical history. *See Whaley*, 51 Ark. App. at 169–70, 912 S.W.2d at 15. The Commission obviously relied upon appellee's relation of his left eye problems to the chemical injury he sustained on January 30, 1995. Further, it relied upon appellee's and Dr. Blair's indications that the wheel cleaner was an acidic solution. Thus, substantial evidence supports the Commission's findings.

Appellant also argues that Dr. Blair's medical testimony was not stated to a reasonable degree of medical certainty. Specifically, appellant argues that the standard is not satisfied by Dr. Blair's opinion that the wheel cleaner "can" cause an irregular corneal astigmatism.

██ Appellant's argument requires us to further interpret Act 796 of 1993. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Vanderpool v. Fidelity & Casualty Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997); *Terral v. Terral*, 212 Ark. 221, 205 S.W.2d 198 (1947). The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. *Vanderpool*, 327 Ark. at 415, 939 S.W.2d at 285. A legislature is presumed, in enacting a statute, to have had in mind court decisions pertaining to the subject legislated on and to have acted with reference thereto. *Terral*, 212 Ark. at 228, 205 S.W.2d at 201.

Prior to the passage of Act 796, proof of causation in workers' compensation cases did not require medical certainty. *See Hubley v. Best Western-Governor's Inn*, 52 Ark. App. 226, 232 &

n.1, 916 S.W.2d 143, 146 & n.1 (1996). Our decisions simply did not require physicians to express opinions in terms of either a "most likely possibility" or "a reasonable degree of medical certainty." *Pittman v. Wygal Trucking Plant,* 16 Ark. App. 232, 700 S.W.2d 59 (1985). Thus, in pre-Act 796 cases, we held that the medical experts' use of such terms as "possible" or "might cause," among others, did not preclude a finding of causal connection provided there was other evidence supporting that conclusion. *Id.*; *see Carter v. Flintrol, Inc.,* 19 Ark. App. 317, 720 S.W.2d 337 (1986).

Act 796 clearly works a change in our prior law. Section 11-9-102(5)(D) states that "[a] compensable injury must be established by medical evidence . . . ." Section 11-9-102(16)(B) requires that "[m]edical opinions addressing compensability . . . must be stated within a reasonable degree of medical certainty . . . ." The statute does not require the use of the phrase, "reasonable degree of medical certainty." Rather, it requires that the opinion be stated *within* a reasonable degree of medical certainty.

■ Viewed in the context of our prior law, the change wrought by § 11-9-102(16)(B) becomes apparent. Our prior law did not bar a finding of causal connection if a doctor used tentative expressions or phrases, provided that there was other evidence supporting the conclusion. *See Pittman,* 16 Ark. App. at 236, 707 S.W.2d at 61-62. We presume that the General Assembly was aware of this when it enacted Act 796. *See Terral, supra.* Section 11-9-102(16)(B) changes prior law. Now, medical opinions addressing compensability under § 11-9-102(5)(A)(i) must be stated in terms expressing the medical expert's reasonable certainty that the claimant's internal or external physical harm was caused by his accidental injury.

A recent decision of the Supreme Court of Nebraska is helpful in this regard:

> Our cases discussing the sufficiency of expert opinions have been a survey of various characterizations by the claimant's experts as to how certain they are that the claimant's injury was caused by his or her employment. We have held that expert medical testimony based on "could," "may," or "possibly" lacks the definite-

ness required to meet the claimant's burden to prove causation. Our well-known preference for the use of the phrases "reasonable degree of medical certainty" or "reasonable degree of probability" is an indication to courts and parties of the necessity that the medical expert opinion must be stated in terms that the trier of fact is not required to guess at the cause of the injury.

*Paulsen v. State*, 249 Neb. 112, 121, 541 N.W.2d 636, 643 (1996)(citations omitted). Although the court expressed a preference for certain phrases, it noted "that an expert opinion is to be judged in view of the entirety of the expert's opinion and is not validated or invalidated solely on the basis of the presence or lack of the magic words 'reasonable medical certainty.'" *Id.*

Applying this reading of § 11-9-102(16)(B), appellant's challenge to Dr. Blair's opinion must fail. Relying upon appellee's account, Dr. Blair stated that "[c]ertainly, an acidic solution such as wheel cleaner can cause irregular corneal astigmatism like that present in [appellee]." This opinion complies with the statute.

Appellant also challenges the Commission's reservation of the issue of permanent disability for later determination. Appellant contends that if appellee has not developed his evidence, he should not be allowed a second chance to offer proof. Appellant cites Ark. Code Ann. § 11-9-705(c)(1) for the proposition that all evidence must be presented in the initial hearing.

Appellee sought permanent disability compensation for the decreased visual acuity caused by the irregular corneal astigmatism in his left eye. The Commission affirmed the administrative law judge's reservation of this issue. The Commission referenced Dr. Blair's determination that appellee's uncorrected visual acuity is 20/40, and her statement that his visual acuity may be subject to improvement by use of a hard contact lens over the cornea. Arkansas Code Annotated § 11-9-521(c)(2) provides that, in all cases of permanent loss of vision, the use of corrective lenses may be taken into consideration in evaluating the extent of loss of vision. Since all medical treatment had been controverted, and since Dr. Blair had not yet determined the degree of correctable

impairment, the Commission found that the ALJ properly reserved this issue.

We agree. Appellee's initial medical treatment and evaluation were never completed, justifying a reservation of the issue of permanent disability for later determination. *See Gansky v. Hi-Tech Eng'g,* 325 Ark. 163, 924 S.W.2d 790 (1996).

Affirmed.

NEAL and GRIFFEN, JJ., agree.