Charles FRANCES *v.*
GAYLORD CONTAINER CORPORATION

00-130 20 S.W.3d 280

Supreme Court of Arkansas
Opinion delivered June 8, 2000
[Petition for rehearing denied July 13, 2000.]

*Davis, Mitchell & Davis*, by: *Gary Davis*, for appellant.

*Bridges, Young, Matthews & Drake PLC*, by: *Michael J. Dennis*, for appellee.

W.H."DUB" ARNOLD, Chief Justice. Appellant, Charles Frances, brings the instant appeal challenging a decision of the Workers' Compensation Commission denying his claim for medical expenses and temporary total-disability benefits. In a published decision dated January 19, 2000, the Arkansas Court of Appeals reversed the Commission's decision. *See Frances v. Gaylord Container Corp.*, 69 Ark. App. 26, 9 S.W.3d 550 (2000). Pursuant to Ark. Sup. Ct. R. 2-4 (2000), we granted review of the appellate court's decision. Viewed in the light most favorable to the Commission's decision, we hold that substantial evidence supports the denial of benefits. Accordingly, we affirm the Commission's decision because we agree that such benefits may not be awarded under the instant facts and in the absence of medical testimony sufficient to

satisfy the requirements of Ark. Code Ann. section 11-9-102(16)(B) (Supp. 1999).

The parties agree that on September 23, 1996, Frances was injured while working for appellee, Gaylord Container Corporation. At the time of the accident, Frances had worked for appellee for approximately thirty-four years. According to Frances's testimony, on the day of the accident he was clearing away paper, broken during processing, from a paper machine when a scanner struck him on his left side, causing him to twist to the floor in an awkward motion to avoid being seriously injured. Following the accident, Frances continued to work until mid-November, when he missed two days of work.

Eventually, Frances sought medical treatment on December 2, 1996, from Dr. Clyde Paulk, who referred him to Dr. Robert D. Dickins, Jr. Following an MRI scan, Dr. Dickins diagnosed Frances with a possible herniation. Frances then began conservative treatment, including physical therapy, and continued to work full-time, until his back condition failed to improve. Ultimately, on September 3, 1997, he underwent surgery and remained off work until January 7, 1998.

Frances's co-worker, Brian Hamblin, an eight-and-a-half-year employee who worked as third-man on the paper machine for four years, corroborated the September 23, 1996, incident. Specifically, Hamblin testified that Frances's shirt was torn and that his arm was cut following the incident. Hamblin also recalled that Frances reported the incident to supervisors and completed an accident report with the foreman. Two to three days after the accident, Hamblin observed that Frances "laid up on the counters" because of back pain and that he began walking with a limp.

Randy Womack, a four-year employee who worked as the fourth-hand on the paper machine in September of 1996, testified similarly. Womack reported that Frances told him that the "scanner had caught him." Womack also observed that Frances's "arm was bleeding and his shirt was torn" after the accident. Moreover, he related that three days after the accident, Frances told him that his back was hurting and he was feeling numbness in his leg.

Bobby Young, Frances's auto mechanic, testified that in November of 1996, Frances came in Young's shop "walking

crooked." According to Young, Frances told him that he had an accident at work and had hurt his back. Young also added that he had been Frances's mechanic for ten years, and Frances never indicated that he had been hurt any other way.

After Frances filed his claim for workers' compensation benefits, the Administrative Law Judge determined that the claim was compensable and ordered Gaylord to pay appellant related medical expenses and temporary total-disability benefits from September 3, 1997, through January 7, 1998. Gaylord appealed the ALJ's decision to the Workers' Compensation Commission, which reversed the ALJ and found that Frances had failed to prove that his back condition was the result of any work-related accident.

Notably, the Commission also found that Dr. Dickins's opinion failed to satisfy the requirements of Ark. Code Ann. section 11-9-102(16)(B) (Supp. 1999), which provides that medical opinions addressing compensability must be stated "within a reasonable degree of medical certainty." The relevant portion of Dr. Dickins's letter report, relating to causation, states:

> As you are aware, the determination of onset of symptoms related to an injury is determined based on the history a patient gives the physician. The description of the injury Mr. Francis sustained is included in my consultation report dated December 6, 1996. The statement that I can make about this is that the mechanism of injury that he describes *could* produce a lumbar disc injury. The history given that he initially sustained back pain and then four weeks later had recurrent back and leg pain *could* be consistent with an injury to the disc initially, subsequently followed by the development of a herniation of that disc.

(Emphasis added.)

 Following the Commission's decision reversing the ALJ's award, Frances appealed to the Arkansas Court of Appeals. The appellate court reversed and remanded the case, reasoning that the Commission had no substantial basis to deny compensability. Although the appellate court agreed that credibility determinations were left to the Commission, it submitted that the Commission was not free to arbitrarily disregard any witness's testimony. See *Frances*, 69 Ark. App. at 30, 9 S.W.3d at 553. From the appellate court's decision reversing the Commission, comes the instant appeal. Notably, when we grant a petition to review a case decided by the Court

of Appeals, we review it as if it was filed originally in this court. *See Williams v. State*, 328 Ark. 487, 944 S.W.2d 822 (1997) (citing *Allen v. State*, 326 Ark. 541, 932 S.W.2d 764 (1996)).

## I. Substantial evidence

■ Appellant's first point on appeal challenges the sufficiency of the evidence supporting the Commission's decision denying him benefits. On appeal, this court will view the evidence in the light most favorable to the Commission's decision and affirm when that decision is supported by substantial evidence. *Ester v. National Home Ctrs., Inc.*, 335 Ark. 356, 361, 981 S.W.2d 91 (1998) (citing *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997)).

■ Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* Moreover, we will not reverse the Commission's decision unless fair-minded persons could not have reached the same conclusion when considering the same facts. *Id.* Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997).

Although appellee Gaylord acknowledges that the September 23, 1996, accident occurred, it contends that Frances's injuries are not attributable to the accident. In support of its position, appellee cites instances when Frances reported other causes as the source of his condition, including statements to medical providers and insurance carriers that his injury was not work-related. For example, Gaylord points to Frances's initial statement to his treating physician that his injuries were not work-related. Next, Frances told Dr. Dickins that he had a subsequent work-related accident in November of 1996, which caused his pain. Frances also denied work-relatedness when he applied for group health benefits. Furthermore, Frances suggested to his co-worker Brian Hamblin that his back problem was caused by old age rather than a work-related accident.

Likewise, Gaylord suggests that Frances's work history disproves a causal link between the September accident and his subse-

quent injuries. First, Frances continued to work full duty for nearly a year following the incident and missed only two days of work. Second, Frances delayed seeking medical treatment until December 2, 1996, more than two months after the September accident. Third, he delayed surgery until almost a year after the incident. Fourth, following a meeting with supervisors in January of 1997 to discuss his medical treatment plan, Frances informed his employer that he would handle his medical bills privately in lieu of filing a workers' compensation claim.

In response, Frances suggests that he elected to pay his own way because he was told that if he filed a claim, it would probably be denied and his insurance might stop paying. Apparently confused as to the consequences of signing the workers' compensation claim forms and seeing appellee's doctors, Frances opted to continue treatment with his own physicians. In any event, Gaylord argues that these facts provide substantial evidence to support the Commission's decision to deny benefits. We agree. Viewed in the light most favorable to the Commission's decision, we conclude that substantial evidence supports the denial of benefits. Accordingly, we affirm the Commission and reverse the Court of Appeals.

## II. Section 11-9-102(16)(B)

The second issue before us on appeal concerns the interpretation of the clause "within a reasonable degree of medical certainty," as set forth in Ark. Code Ann. section 11-9-102(16)(B) (Supp. 1999). At the heart of the instant appeal is Dr. Dickins's report opining that the accident, as described by Frances, *could* have caused the herniation and need for surgery. The Commission determined that this opinion fell short of the statutory requirement that opinions must be stated within a reasonable degree of medical certainty. *See* Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999). On the other hand, Frances argues that Dr. Dickins's failure to use the magic words "reasonable medical certainty" does not, by itself, invalidate the opinion. In that vein, Frances cites the Court of Appeals' decision in *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998).

In *Atwood*, the Court of Appeals quoted favorably from a Nebraska Supreme Court decision which explained that:

. . . expert medical testimony based on "could," "may," or "possibly" lacks the definiteness required to meet the claimant's burden to prove causation. Our well-known preference for the use of phrases "reasonable degree of medical certainty" or "reasonable degree of probability" is an indication to courts and parties of the necessity that medical expert opinion must be stated in terms that the trier of fact is not required to guess at the cause of the injury.

*Atwood*, 61 Ark. App. at 196-97, 966 S.W.2d at 913 (quoting *Paulsen v. State*, 249 Neb. 112, 121, 541 N.W.2d 636, 643 (1996)). Following this direct quote from the *Paulsen* case, the *Atwood* court reasoned that although the court expressed a preference for certain phrases:

"... an expert opinion is to be judged in view of the entirety of the expert's opinion and is not validated or invalidated solely on the basis of the presence or lack of the magic words 'reasonable medical certainty.' "

*Atwood*, 61 Ark. App. at 197, 966 S.W.2d at 913 (quoting *Paulsen v. State*, 249 Neb. 112, 121, 541 N.W.2d 636, 643 (1996)).

In its petition for review, Gaylord submitted that the appellate court's decision in *Frances v. Gaylord Container Corp.*, 69 Ark. App. 26, 9 S.W.3d 550 (2000), was in conflict with *Atwood*. We agree. In quoting with favor from *Paulsen*, the Court of Appeals acknowledged in *Atwood* that medical opinions based upon "could," "may," or "possibly" lack the definiteness required to meet the claimant's burden to prove causation. However, in conflict with that expressed position, the *Atwood* court determined that a physician's opinion was sufficient when he opined that although eye exams, before and immediately after the claimant's injury, would be needed to clearly associate the injury to work-related events, acid "*can* cause" the claimant's injury. *Atwood*, 61 Ark. App. at 197, 966 S.W.2d at 912-13. (Emphasis added.)

We expressly agree with the Nebraska Supreme Court's decision in *Paulsen* that expert opinions based upon "could," "may," or "possibly" lack the definiteness required to meet the claimant's burden to prove causation pursuant to section 11-9-102(16(B). Accordingly, we modify and overrule the Court of Appeals' decision in *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998), to the extent that it may be read to permit expert opinion evidence under section 11-9-102(16)(B) to be satis-

fied by the use of terms such as "can," "could," "may," or "possibly."

■ We also note that although *Atwood* seemingly rejects an expert's use of the word "could" when stating an opinion within a reasonable medical certainty, it validates an expert's use of the word "can." Given this inherent contradiction, it is understandable why Frances chose not to rely on the *Atwood* decision in support of his argument. Consequently, because Frances never cited or relied upon *Atwood*, we apply our limited overruling of *Atwood* retroactively. *See Wiles v. Wiles*, 289 Ark. 340, 342, 711 S.W.2d 789, 790-91 (1986); *see also Looney v. Bolt*, 330 Ark. 530, 536-37, 955 S.W.2d 509, 512 (1997). In conclusion, we hold that Dr. Dickins's opinion that appellant's work-related accident was the kind of event that *could* cause his resulting back condition was insufficient to satisfy section 11-9-102(16)(B).

CORBIN and SMITH, JJ., concur in part, dissent in part.

DONALD L. CORBIN, Justice, concurring in part; dissenting in part. I concur with the result reached by the majority, but I write separately to express my concern that this opinion not be so broadly construed as to preclude future workers' compensation claims simply because of the way a doctor phrases his medical opinion. As the majority correctly points out, Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999) requires that a doctor's opinion be stated *within* a reasonable degree of medical certainty, but this requirement does not mean that a doctor's opinion must be stated in unequivocal terms. The practice of medicine is not an exact science. When a patient relates the history of an injury, the doctor may acknowledge that an on-the-job accident caused the injury, but the doctor may also realize that the particular injury could have resulted from other sources as well. In light of the fact that doctors generally are not present when an employee is injured, it is understandable that their opinions may be stated in less than certain terms.

In the present matter, I believe that the majority fails to emphasize a crucial factor common in both this case and *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998), that impacts the reliability of the doctors' opinions. That factor is the lapse of time following the claimants' accidents before either of

them consulted with a physician. Here, Frances waited over two months from the time of his accident until the time he sought medical treatment. This lapse certainly contributed to the doctor's inability to state with certainty that Frances's injury was work related. Likewise, in *Atwood*, the doctor stated that an opthamologic exam before and immediately after the injury would be needed to clearly associate the injury with the accident sustained by the appel-lee at work. Clearly, the facts and circumstances present in both of these cases support a finding that a doctor's opinion stated in terms of "can," "could," "may," or "possibly" do not meet the require-ment of section 11-9-102(16)(B) that the opinion be stated within a reasonable degree of medical certainty. I do not believe, however, that given the right set of facts and circumstances, that a doctor's opinion will automatically fail to meet this requirement simply because of the use of one of these terms.

Concurring in part; dissenting in part.

SMITH, J., joins.