Molly M. HOWELL *v.* SCROLL TECHNOLOGIES

00-725                                    35 S.W.3d 800

Supreme Court of Arkansas
Opinion delivered January 4, 2001

*Lane, Muse, Arman & Pullen* by: *Jon B. Gann*, for appellant.

One brief only.

ANNABELLE CLINTON IMBER, Justice. Molly Maurine Howell appeals the decision of the Arkansas Workers' Compensation Commission denying her benefits for claimed occupational disease. Ms. Howell argues that there is no substantial basis to support the denial of benefits. We agree and reverse for the award of benefits.

Ms. Howell began working for Scroll Technologies on September 30, 1996. She was forty-seven years old at the time, had never smoked, was in generally good health, and had never been hospitalized. Ms. Howell worked ten-hour shifts four days a week, operating three machines on "operation 30." When the doors of these machines automatically opened, Ms. Howell placed a piece of metal called a scroll into each machine. The doors then closed automatically and the machine ground the scroll to make it shiny. Inside the Op30 machines were various smaller parts involved in the grinding process, one of which was a piece of metal labeled "Kennametal" that was inserted onto a rod inside of the Op30 machine to help grind the scrolls. The Kennametal parts in each machine required sharpening five times a day as a result of wear during the grinding process. Ms. Howell did not sharpen the parts

herself; she removed them from the machine, carried them to another department for sharpening and then replaced them in the machine. A coolant was mixed with the parts in the machine to prevent fire from the heat generated by the grinding of metal. When the grinding was complete, the doors opened again automatically and Ms. Howell removed the scroll from the machine and inserted another. She repeated this process on a machine approximately 300 times during the course of each shift, working simultaneously on three different machines and inserting approximately 700 to 900 scrolls into the machines each shift. Every time the machine doors opened, Ms. Howell testified that she was "hit in the face" by a malodorous green mist that burned her chest and throat. The mist appeared to Ms. Howell to be comprised of the "grinding stuff" and the coolant.

In March of 1997, Ms. Howell began experiencing lower back pain and difficulty breathing. She went to Dr. Jansen in Arkadelphia for treatment and was admitted to the Baptist Memorial Hospital in Arkadelphia the next day. Ms. Howell remained for three days in intensive care. Tests revealed adult respiratory distress syndrome with bilateral pneumonia and respiratory failure, but Ms. Howell's physicians were unable to determine the cause of her respiratory failure. She was transferred by ambulance to Baptist Hospital in Little Rock on April 1, 1997, where she was placed on a respirator. Her primary treating physician in Little Rock was Dr. Arthur Squire of the Little Rock Diagnostic Clinic. The clinic's preliminary analysis report, completed on April 1, 1997, indicated that Ms. Howell had a "severe but presently acceptable shortness of breath at rest," but, she had "no exercise tolerance whatsoever. Sitting up in bed causes her (sic) begin to cough."

Ms. Howell remained hospitalized in Little Rock until April 9, 1997. She continued her treatment at home with the use of an inhaler three times each day until she was able to return to work at Scroll Technologies on June 5, 1997. Upon return to work, Ms. Howell resumed the job of operating the Op30 machines. Eventually, she began to experience respiratory difficulties again, with pain in her chest and burning in her throat. Ms. Howell again visited the doctor and was again hospitalized in September 1997. On this occasion, she was variously diagnosed as suffering from bronchitis, pneumonia, and emphysema. Ms. Howell once again returned to work on the Op30 machines after a few weeks, but began to believe

that her illness was caused by this work when in October 1997, after being at work only a short time since her previous hospitalization, she again experienced breathing difficulties. Ms. Howell requested a mask to wear while working, but was informed by her supervisor that she must consult the company nurse and receive authorization from the "safety lady" to wear a mask. According to Ms. Howell, the nurse provided her with a dust mask. Ms. Howell worked for one week and one day before she was again hospitalized with respiratory problems. She had difficulty breathing, abrupt episodes of fever, sweat, chill, and cough; her sputum was alternately yellow and clear, sometimes containing blood. Ms. Howell expressed her concern to her physicians that her illness was work-related and gave her treating physicians, Dr. Ford and Dr. Squire, a label that she had removed from a package containing new Kennametal parts for use in the Op30 machines. She had not noticed this label until after her third episode of breathing difficulties. On the label was a warning that read:

> WARNING: Grinding product produces potentially hazardous dust/mist that can irritate skin, eyes, nose, throat, and cause temporary or permanent respiratory disease. Permanent respiratory disease can lead to disability or death. Use local ventilation and respiratory protection. Avoid breathing of and prolonged skin contact with dust/mist. Tools can chip or fragment in use. Wear eye protection and use machine guards.

Ms. Howell's doctors authorized her to return to work near the end of November 1997, but Ms. Howell chose not to return to Scroll Technologies because her employer would not transfer her to a different position. Ms. Howell remained under the care of Dr. Squire until February 1998, during which time she continued to improve. She remained off work until April 16, 1998, when she accepted other employment. She has had no further respiratory problems and is no longer under medical care.

Ms. Howell's primary treating physician, Dr. Squire, ultimately diagnosed Ms. Howell as having suffered from "recurrent persistent respiratory symptoms with cough, sputum production and blood streaking associated with shortness of breath." Dr. Squire could be no more specific in his diagnosis of Ms. Howell's illness, although he did state that she suffered from "intermittent bronchitis of a severe sort with interval bronchitis of a lesser degree." When

questioned about the source of Ms. Howell's illness, Dr. Squire, testified:

> I think that this patient was exposed to substances for which she brought me a warning label and that it would make sense that if she had exposure to the dusts made from these substances that are on the label and had symptoms such as those she presented with, one would come to the conclusion that, unless there was something else wrong with the patient, that it was very likely that these substances had caused the trouble. I don't think that she had had trouble before she went to work there, and apparently she became better after she was no longer employed at that machine .... But I think that it would be reasonable to presume that the substances were causative.

Dr. Squire later expanded upon this opinion, stating:

> I have no reason to doubt this lady was exposed to the substance that could make her ill, and she had illnesses that would fit the warning labels, and after she was no longer exposed, she seemed to be improved.... [T]o be 100 percent sure [of exposure at work], you would have to send her back to the machine and see what happened.... [I]f she got sick again ... you would have some idea.... Am I 100 percent certain of it [that the machine at work caused this illness]? No.... I think it made absolute sense that the machine was making her sick, but 100 percent we're never going to get to.

> \* \* \* \* \*

> CLAIMANT'S COUNSEL:  In your opinion, as her treating physician, based upon the history that she's given you, your treatment of her, your exam of her, and findings and diagnoses that you've made, is it fair to say, within reasonable medical certainty, that you think this is at least 51 percent the cause of her condition?

> DR. SQUIRE:  ...This lady had not had any trouble with her lungs before she worked at this place, and when she finished working at this place, to the best of my knowledge, she has had no further trouble with her lungs.  It would make it seem reasonable that she had in some way gotten exposed to something that caused her to be ill, given that she was able to provide that information. So is it 51 percent? Yes, I think so.

Scroll Technologies submitted no evidence contradicting the opinion of Dr. Squire or the description by Ms. Howell of the

machine, her job duties, and the effects upon her health. Scroll Technologies did cross-examine Ms. Howell based upon her application for employment about hazardous working conditions in her previous jobs, wherein Ms. Howell worked occasionally with asbestos and was regularly exposed to dust, fiber, and fumes. However, Scroll Technologies presented no evidence of any respiratory or related illnesses caused by exposure to any of these substances or any causative relationship between Ms. Howell's prior employment and her 1997 respiratory disease.

The parties stipulated to the existence of an employer/employee relationship and Ms. Howell's average weekly wage. A hearing was conducted on December 28, 1998, to litigate the issues of compensability, temporary total disability, medical benefits, and attorney's fees. Following the hearing, the administrative law judge found that, although it was clear that Ms. Howell suffered from a condition which resulted in disability, she had failed to prove that she suffered a compensable occupational disease while in the employ of Scroll Technologies. The law judge premised this conclusion on his finding that Ms. Howell "failed to establish by clear and convincing evidence a causal connection between her employment and her occupational disease."

Ms. Howell appealed the law judge's decision to the full Workers' Compensation Commission, which affirmed and adopted the opinion of the law judge. Ms. Howell appealed from the full Commission to the Arkansas Court of Appeals, which reversed the Commission's decision and remanded for the award of benefits, holding that there was no basis for the Commission's conclusion that Ms. Howell failed to prove a causal connection between her medical condition and her work. *Howell v. Scroll Technologies*, CA99-1132 (Ark. App. May 31, 2000). Scroll Technologies petitioned this court for review arguing that the court of appeals misinterpreted the statute requiring that proof of an alleged occupational disease be clear and convincing. This court granted the petition pursuant to Ark. Sup. Ct. R. 1- 2(e) (2000). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *Tucker v. Roberts-McNutt, Inc.*, 342 Ark. 511, ___ S.W.3d ___ (2000); *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). Our standard of review is well-settled:

On appeal, this court will view the evidence in the light most favorable to the Commission's decision and affirm when that decision is supported by substantial evidence. *Ester v. National Home Ctrs., Inc.*, 335 Ark. 356, 361, 981 S.W.2d 91 (1998) (citing *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997)).

Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* Moreover, we will not reverse the Commission's decision unless fair-minded persons could not have reached the same conclusion when considering the same facts. *Id.* Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997).

*Frances v. Gaylord Container Corp.*, 341 Ark. 527, 531, 20 S.W.3d 280 (2000).

■ Ms. Howell alleges that she is entitled to benefits because of a compensable occupational disease.

Where an employee suffers from an occupational disease as defined in this subchapter and is disabled or dies as a result of the disease and where the disease was due to the nature of the occupation or process in which he was employed within the period previous to his disablement as limited in subsection (g) of this section, then the employee, or, in case of death, his dependents, shall be entitled to compensation as if the disablement or death were caused by injury, except as otherwise provided in this subchapter.

Ark. Code Ann. § 11-9-601(a) (Repl. 1996). An "occupational disease" is "any disease that results in disability or death and arises out of and in the course of the occupation or employment of the employee." Ark. Code Ann. § 11-9-601(e)(1)(A) (Repl. 1996). To be compensable, a causal connection between the occupational disease and the employment must be proven by clear and convincing evidence." Ark. Code Ann. § 11-9-601(e)(1)(B) (Repl. 1996). Furthermore, the employer is not liable for compensation unless the disease is due to the nature of the employment in which the hazard that caused the disease actually exists and is characteristic of and

peculiar to the employment. Ark. Code Ann. § 11-9-601(g)(1) (Repl. 1996).

■ In the instant case, the Commission held that, even though Ms. Howell clearly established the existence of a disease that resulted in disability, she failed to establish that her occupational disease was compensable because she failed to provide clear and convincing evidence of a causal connection between her employment and the disease. Clear and convincing evidence is "that degree of proof which will produce in the factfinder a firm conviction as to the allegation sought to be established." *J.T. v. Arkansas Dep't of Human Servs.*, 329 Ark. 243, 248, 947 S.W.2d 761(1997); *Booker v. State*, 324 Ark. 468, 472, 922 S.W.2d 337 (1996); *Kelly v. Kelly*, 264 Ark. 865, 870, 575 S.W.2d 672 (1979) (holding that evidence "so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the facts related is clear and convincing").

Ms. Howell presented the following evidence of causation to the Commission:

- The Op30 machines on which she worked ten hours a day, four days a week contained parts labeled "Kennametal" which, when ground, cause a potentially hazardous dust/mist that can cause respiratory disease.

- The machines in which the "Kennametal" parts were used emitted a dust/mist every time the doors opened.

- During the grinding process in the Op30 machines, the"Kennametal" parts were ground down so much each day that they required sharpening approximately five times in each ten-hour shift.

- Ms. Howell was exposed to the dust/mist emitted from each Op30 machine approximately 300 times each day.

- Ms. Howell developed severe respiratory distress after working on the Op30 machines at Scroll Technologies for a period of six months.

- Ms. Howell had no history of respiratory distress or other medical problems.

- Ms. Howell's condition improved each time she was away from the Op30 machines for treatment and returned each time she resumed working on the Op30 machines.

- Ms. Howell's condition disappeared when she left the employ of Scroll Technologies.

- Ms. Howell's treating physicians could find no other cause of her respiratory distress after repeated testing over the period of a year.

- Ms. Howell's principal treating physician, Dr. Squire, testified that it was his opinion, within a reasonable degree of medical certainty, that Ms. Howell's exposure at work was at least 51 percent of the cause of her condition.

Although Scroll Technologies has no burden of proof or disproof, it presented no evidence that would contradict or tend to discredit any of the above evidence. The Commission discredited Ms. Howell's evidence of causation, finding that, although the evidence may rise to the level of a preponderance, it was not clear and convincing. In arriving at this decision, it found that Dr. Squire's opinion was not sufficient to demonstrate causation because he was not an industrial disease specialist, and because his opinion was based mostly upon the timing of her illnesses and recuperation. Moreover, the Commission concluded that the timing of the illnesses and recoveries was not clear and convincing evidence of causation; rather, it was merely evidence of coincidence. Finally, the Commission discounted the warning label from the Kennametal package, finding that it did not warn against the type of exposure to which Ms. Howell was subjected. Rather, the warning label applied only "to the sharpening of the grinding tool as opposed to the process claimant was involved in when the tools were used to polish and shape the pieces of metal." On these bases, the Commission denied compensation.

The court of appeals reversed the Commission's decision, holding that (1) Dr. Squire's testimony concerning causation was stated within a reasonable degree of medical certainty; (2) the warning label affixed to the Kennametal part warned against precisely the type of work that was being performed by Ms. Howell; and (3) there was no evidence in the record to dispute the evidence of causation offered by Ms. Howell. In its petition for review, Scroll Technologies argues that the court of appeals misinterpreted

the clear and convincing evidence requirement. We conclude that the opinion does not reflect a misinterpretation of the statute; rather, the court of appeals held that a claimant is not required to prove beyond a reasonable doubt that her work caused her illness.

■ We agree with the court of appeals that there is no basis in the record for the Commission to find that Ms. Howell failed to prove by clear and convincing evidence that her occupational disease was caused by her employment at Scroll Technologies. The evidence outlined above is clear and convincing, and there is no contradictory evidence in the record. Consequently, we reverse and remand with directions that the Commission enter an order awarding Ms. Howell the full benefits to which she is entitled.

We note that Dr. Squire testified the patient was exposed to substances that were on the warning label and that it "was very likely that these substances caused the trouble." He also responded affirmatively when asked whether he believed within a reasonable medical certainty that Ms. Howell's exposure at work was at least 51 percent of the cause of her condition. "Medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty." Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999). Relying upon a standard articulated in *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998), the court of appeals held that Dr. Squire's opinion was stated within a reasonable degree of medical certainty. We overruled in part the court of appeals' *Atwood* decision in *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). However, we did so only "to the extent that it may be read to permit expert opinion evidence under section 11-9-102(16)(B) to be satisfied by the use of terms such as 'can,' 'could,' 'may,' or 'possibly.' " *Frances v. Gaylord Container*, 341 Ark. at 533-534, 20 S.W.3d at 284. We upheld the standard which the court of appeals purported to be applying in *Atwood*, even though it was erroneously applied in that case.

■ As the court of appeals correctly noted here, Dr. Squire's testimony attributed Ms. Howell's illness to her employment. His opinion was sufficiently clear to remove any reason for the trier of fact to have to "guess at the cause of the injury." *Frances v. Gaylord Container*, 341 Ark. at 533, 20 S.W.3d at 284 (quoting with approval *Paulsen v. State*, 249 Neb. 112, 121 (1996)). It was thus stated

within a reasonable degree of medical certainty and may be called upon to support Ms. Howell's claim of compensability.

Reversed and remanded.

HANNAH, J., not participating.