Mary (Noelker) FREEMAN
*v.* CON-AGRA FROZEN FOODS

00-1221 40 S.W.3d 760

Supreme Court of Arkansas
Opinion delivered March 29, 2001
[Petition for rehearing denied May 3, 2001.]

*Mark E. Ford*, for appellant.

*William F. Smith*, for appellee.

DONALD L. CORBIN, Justice. ■ Appellant Mary Noelker Freeman appeals the decision of the Arkansas Workers' Compensation Commission denying her claim for benefits for carpal tunnel syndrome and bilateral epicondylitis ("tennis elbow"), which she alleged arose out of and in the course of her employment with Appellee Con-Agra Frozen Foods. The Commission found that Appellant failed to prove that her injuries were work related. The Arkansas Court of Appeals originally reversed the Commission's decision, but pursuant to a petition for rehearing, issued a substituted opinion affirming the Commission. *See Freeman v. Con-Agra Frozen Foods*, 70 Ark. App. 306, 19 S.W.3d 43 (2000). We granted Appellant's petition for review pursuant to Ark. Sup. Ct. R. 1-2(e)(iii). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). We reverse.

The record reflects that before reporting to work on November 21, 1997, Appellant experienced shooting pain in her wrists while wiping up some spilled tea from a kitchen counter in her

home. According to Appellant, she had been experiencing pain and numbness in her hands and elbows, accompanied by a loss of grip strength, for several months prior to this incident. Appellant admitted that she did not initially report her problems to anyone other than her coworkers because she believed that the pain was simply a "part of the job."

Appellant's job duties consisted of working on a moving production line, placing the correct portion of food into the triangular compartments of a frozen dinner tray. Sometimes Appellant was responsible for adjusting the portion of meat or potatoes in the frozen dinners. When a greater portion was needed, Appellant was required to dig into a box of frozen chicken pieces or frozen potatoes to find an adequate portion. Other times, Appellant was responsible for distributing rice into the trays, by using an ice cream scoop. Appellant was also responsible for inspecting the frozen dinners and pressing the food down into the trays before they were sealed. Appellant testified that she was responsible for filling approximately sixty-five trays per minute. Appellant worked eight-hour-a-day shifts on the production line, usually working forty hours per week. She had been employed with Appellee since November 27, 1995.

When Appellant arrived at work on November 21, she went to the company's medical office and asked the nurse, Sharon Reed, to wrap her wrists. She told Ms. Reed that she had experienced an onset of pain while at home. At this time, Appellant did not tell the nurse that she believed that her pain was work related. Appellant was only able to complete about an hour of her shift that day due to the pain in her wrists. She went back to the nurse's office, but the nurse told her that she must make an appointment with her own physician, because she had not sustained an injury at work.

Appellant saw her family physician, Dr. Charles Jones, on November 24, 1997. According to Dr. Jones's report, Appellant told him that she had been experiencing problems with her hands and wrists for two to three months, but that those problems had worsened during the last one to two weeks. Dr. Jones scheduled Appellant for a nerve conduction study for the following day at Coulter Physical Therapy. After reviewing the Coulter report, Dr. Jones diagnosed Appellant as suffering from bilateral carpal tunnel syndrome with bilateral epicondylitis or "tennis elbow." He specifically opined that "[t]his overuse syndrome type picture is consistent

with the job description that she gives." Dr. Jones restricted Appellant from using the ice cream scoop at work until she was able to undergo treatment for her injuries.

When Appellant initially returned to work with Dr. Jones's restriction, she was not allowed to work and was instead placed on medical leave. At this time, Appellant also reported to Ms. Reed that she had been diagnosed with carpal tunnel syndrome and tennis elbow, and that her injuries were work related. In response, Ms. Reed told Appellant that her condition was not work related because she had failed to report it. Appellant was then instructed to go see Bertha Oliver, in Appellee's insurance office, to find out about collecting medical leave pay. According to Appellant, Ms. Oliver informed her that if she claimed that her injury was work related, she would not receive any medical leave benefits. Despite this information, Appellant completed the required forms and stated that she had suffered a work-related injury. Appellant received no medical leave benefits, but she did use her Blue Cross/Blue Shield medical insurance to cover the costs of her doctors' bills. Blue Cross later requested Appellant's doctors to return the monies paid to them because Appellant had sustained a work-related injury.

In the interim, Dr. Jones referred Appellant to Dr. Richard Nix, an orthopedic specialist. While Dr. Nix concurred with Dr. Jones's diagnosis, he was unwilling to say with absolute certainty that Appellant's job duties caused her medical condition. In a letter to Appellant's attorney, dated June 3, 1998, Dr. Nix stated:

> The injuries for which I have seen the patient are usage related type injuries, often associated with repetitive motion and are more commonly seen in women. Whether this particular usage is associated with production line work or other outside activities, I cannot comment with a reasonable degree of medical certainty. I expect your investigation could help clarify this.

He initially prescribed a course of conservative treatment to relieve Appellant's symptoms. After this treatment failed, Dr. Nix performed carpal-tunnel release, with neurolysis on both of Appellant's wrists on January 2, 1998. After Appellant continued to experience problems with her right thumb, Dr. Nix performed a release of the A-1 pulley on April 21, 1998. Appellant also underwent physical therapy to restore the use of her hands and elbows. Appellant was released to return to work on May 21, 1998, and continued in her job until October 12, 1998, when she found other employment.

Appellee denied Appellant's request for temporary total disability for the period from November 21, 1997, through May 21, 1998, and Appellant filed a claim with the Commission. A hearing was conducted before an administrative law judge (ALJ) on January 29, 1999. Appellee contended that Appellant could not establish the requirements necessary to prove a compensable injury. Specifically, Appellee argued that Appellant did not report her condition as being work related. They also asserted that Appellant took non-work related leave, and that she filed her medical expenses on her group Blue Cross/Blue Shield policy as non-work related.

The evidence before the ALJ consisted of the testimony of Appellant and her medical records. The ALJ found that Appellant had failed to prove by a preponderance of the evidence that her carpal tunnel syndrome and tennis elbow were causally related to her employment. In so finding, the ALJ gave more credence to the opinion of Dr. Nix that he could not state with reasonable certainty that Appellant's injuries resulted from her job duties. At the same time, the ALJ discounted the opinion of Dr. Jones that the injuries were indeed the result of Appellant's job, because Dr. Jones's patient history lacked any notation about the pain increasing while Appellant was wiping up the spilled tea.

The ALJ's findings and conclusions were subsequently adopted by the Commission, which affirmed the denial of benefits. Appellant appealed the Commission's decision to the court of appeals, who initially reversed the matter and remanded it for a determination of benefits. Following a petition for rehearing, the court of appeals issued a substituted opinion, denying benefits on the basis that Appellant had failed to produce sufficient medical evidence proving that her injury was work related. The court of appeals based their decision on two recent cases handed down by this court: *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000), and *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). Appellant now petitions this court for review, arguing that the evidence at issue here is distinguishable from that in *Frances* and *Crudup*. Appellant further argues that *Frances* and *Crudup* are in direct conflict with this court's prior decision in *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999). We now take the opportunity to harmonize those decisions.

In *VanWagner*, this court interpreted what is meant by Ark. Code Ann. § 11-9-102(4)(D) (Supp. 1999), when it says that a compensable injury must be established by medical evidence supported by "objective findings." "[O]bjective findings" are defined

in part as medical opinions stated within a reasonable degree of medical certainty. *See* Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999). This court held that objective medical evidence was not essential to establish a causal relationship between the injury and the work-related accident in all cases. This court went on to say that in some circumstances, medical evidence will be necessary to establish a causal connection, but not in every case.

The cases of *Frances* and *Crudup* involved situations where the appellants chose to rely on medical evidence to establish causation, but such medical evidence failed to satisfy the statutory requirement that medical opinions be stated within a reasonable degree of medical certainty. *See* Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999). In *Frances*, the appellant was injured at work when a scanner struck him on the left side of his body. Following the accident, the appellant continued to work and did not seek medical treatment until almost two months after the accident. The appellant, who was diagnosed with a possible herniation, initially reported to his treating physician that the injury was not work related. He also denied that it was work related when he applied for group health benefits. The appellant also told a coworker that he believed that his back problems were simply caused by old age. A doctor ultimately opined that the accident with the scanner *could* have caused the appellant's injury. The appellant presented no further evidence to establish the fact that the incident with the scanner was in fact the cause of his back problems. This court interpreted what is meant in section 11-9-102(16)(B), when it says that medical opinions addressing compensability must be stated within a reasonable degree of medical certainty. This court then held that the doctor's opinion that the injury *could* produce a lumbar disc injury was insufficient to meet the standard of within a reasonable degree of medical certainty.

Similarly, this court held in *Crudup* that a medical opinion based on the theoretical possibility of a causal connection did not meet the standard. There, the appellant, who had previously suffered a compensable injury to his wrist, attempted to prove that his carpal tunnel syndrome arose out of and in the course of his employment. While the appellant did testify about the repetitive nature of his job duties, the only other evidence offered in support of the appellant's claim was a letter from his doctor declining to definitively state that his injury was caused by his job. The appellant's doctor did state, however, that if he had a chance to review the appellant's work requirements, it would be easier to determine if there was in fact a causal link between his injury and his job. The

record was silent, however, as to whether the appellant ever forwarded the requested information or attempted to follow up on his doctor's request. Therefore, the only evidence presented by the appellant amounted to nothing more than mere speculation. To summarize, this court has held that medical evidence supported by objective findings is not essential in every case, but if medical opinions are offered, they must do more than state that the causal relationship between work and the injury is merely a possibility.

■ This court has never required that a doctor be *absolute* in an opinion or that the magic words "within a reasonable degree of medical certainty" even be used by the doctor. Rather, this court has simply held that the medical opinion be more than speculation. For example, in *Howell v. Scroll Technologies*, 343 Ark. 297, 35 S.W.3d 800 (2001), the opining doctor stated that his patient's exposure at work to a coolant mist was at least fifty-one percent the cause of her respiratory problems. We held that that opinion fell within the standard of a reasonable degree of medical certainty. Accordingly, if the doctor renders an opinion about causation with language that goes beyond *possibilities* and establishes that work was the reasonable cause of the injury, this should pass muster.

Turning now to the merits of the present appeal, Appellant argues that the Commission erred in finding that she failed to prove by a preponderance of the evidence that she suffered a compensable injury. Specifically, Appellant points to the medical opinions of Dr. Jones and Dr. Nix in support of her claim. She also asserts that there was no evidence, such as outside activities or a prior injury, before the commission regarding any other repetitive activity that could be responsible for her injury. Appellee asserts, on the other hand, that Appellant failed to produce sufficient medical evidence to prove that her injuries arose out of and in the course of her employment. We disagree with Appellee's assertion.

■ In appeals involving claims for workers' compensation, we view the evidence in a light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Matthews v. Jefferson Hosp. Ass'n*, 341 Ark. 5, 14 S.W.3d 482 (2000); *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case *de novo*. *Brower Mfg. Co. v. Willis*, 252 Ark.

755, 480 S.W.2d 950 (1972). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White*, 339 Ark. 474, 6 S.W.3d 98.

██ This court has recognized that carpal tunnel syndrome is a gradual-onset injury; hence, it is not necessary that Appellant prove that her injury was caused by rapid repetitive motion. *See Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998). A claimant seeking workers' compensation benefits for a gradual-onset injury must prove by a preponderance of the evidence that: (1) the injury arose out of and in the course of his or her employment; (2) the injury caused internal or external physical harm to the body that required medical services or resulted in disability or death; and (3) the injury was a major cause of the disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(A)(ii) & (E)(ii) (Supp. 1999). Furthermore, a compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Supp. 1999). With regard to the claim for tennis elbow, however, Appellant must additionally prove by a preponderance of the evidence that her upper extremity problems were caused by rapid repetitive motion, because such a condition is not recognized as a *per se* rapid repetitive injury. Ark. Code Ann. § 11-9-102(4)(A)(ii)(a) (Supp. 1999).

Here, there is no dispute that Appellant suffered a physical injury that was the sole cause of her disability or need for treatment. The issue to be resolved is whether Appellant's injuries were work related. Appellant testified in detail about her job duties that required extensive use of her hands and wrists. She also testified that she had no prior injury that could be related to her current problems and denied engaging in any outside activities that could have caused carpal tunnel syndrome or tennis elbow. In addition to her own testimony, Appellant submitted her medical records, which included the medical opinions of two of her treating physicians. First, Dr. Jones stated in his letter that Appellant's injuries were overuse-type injuries consistent with her job duties. Dr. Nix concurred with Dr. Jones that Appellant's injuries were usage-related type injuries often associated with repetitive motions. Dr. Nix declined, however, to state definitively whether Appellant's job, or some outside activities, were the cause of her injuries.

 It is well settled that the ALJ's findings are irrelevant for purposes of appeal, as this court is required by precedent to review only the findings of the Commission and ignore those of the ALJ.

*See, e.g., Matthews*, 341 Ark. 5, 14 S.W.3d 482; *Scarbrough v. Cherokee Enters.*, 306 Ark. 641, 816 S.W.2d 876 (1991). In the instant matter, however, this court must review the findings of the ALJ because the Commission made absolutely no independent findings of its own; rather, it simply adopted each of the findings made by the ALJ. In reviewing the evidence in this matter, the ALJ chose to discount the opinion of Dr. Jones, over the less-certain opinion of Dr. Nix, on the basis that Dr. Jones's report, "does not indicate that the claimant related the history of experiencing the onset of a 'shooting pain' while washing her cabinet at home." This finding adopted by the Commission ignores pertinent information found in the nerve con-duction report compiled by Coulter Physical Therapy in connec-tion with tests ordered by Dr. Jones and used by him to support his diagnosis of Appellant's condition. The Coulter report specifically states that Appellant reported experiencing "an increase in pain Friday w[ith] pain extending from her hand to her elbow." In addition, when asked by Appellee's counsel if she had reported the tea incident to Dr. Jones, Appellant stated that she had reported the incident to him. Moreover, the choice to discount Dr. Jones's opinion on this basis is questionable in light of the fact that Dr. Nix's medical records contain no mention of Appellant reporting any increased pain on a particular date. Furthermore, we are at a loss to see that one single incident would attain such a level of significance in the Commissioners' minds, given that carpal tunnel syndrome is, by definition, a gradual-onset injury.

 It is true that appellate courts defer to the Commission on issues involving the weight of the evidence and the credibility of witnesses. *Crudup*, 341 Ark. 804, 20 S.W.3d 900. We agree with the court of appeals, however, that while the Commission may be insulated to a certain degree, it is not so insulated as to render appellate review meaningless. *Jordan v. J.C. Penney Co.*, 57 Ark. App. 174, 944 S.W.2d 547 (1997). Moreover, we have held that the Commission may not arbitrarily disregard the testimony of any witness. *Hapney v. Rheem Mfg. Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000). Likewise, the Commission may not arbitrarily disregard other evidence submitted in support of a claim. The opinion of Dr. Jones that Appellant's injuries were caused by her job duties was disregarded in an arbitrary manner, and thus, the failure of the Commission to give credence to Dr. Jones's opinion was error. We do not believe that fair-minded persons with the same facts before them could have reached the conclusion arrived at by the Commis-sion. We, therefore, reverse and remand this matter to the Commis-sion for a determination of benefits resulting from Appellant's car-pal tunnel syndrome.

Also upon remand, the Commission must review the evidence in order to determine if Appellant has proven by a preponderance of the evidence the additional requirement that her tennis elbow was caused by rapid repetitive motion and, thus, is compensable.

IMBER, J., dissents.

ANNABELLE CLINTON IMBER Justice, dissenting. The majority correctly points out that our recent decisions do not construe the Workers' Compensation Act to mean that medical opinions addressing compensability are the only evidence that can establish a causal connection between an injury and work conditions. *See Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000); *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000); *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999). However, whenever a medical opinion does address the causation component of compensability, such medical evidence must still satisfy the statutory requirement that medical opinions be stated within a reasonable degree of medical certainty. *See* Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999).

In this case, Appellant's family physician, Dr. Jones, gave his medical opinion that her injuries were overuse-type injuries consistent with her job duties; whereas, Dr. Nix, an orthopedic surgeon, declined to state definitively whether Appellant's job, or other outside activities, were the cause of her injuries. The majority opinion appears to give weight to Dr. Jones's opinion without deciding whether his opinion is stated with a reasonable degree of medical certainty.

While I am also at a loss to understand why Appellant's alleged failure to report a single incident to Dr. Jones should be a reason for discounting Dr. Jones's opinion as to a gradual-onset injury, the fact remains that appellate courts defer to the Commission on issues involving the weight of the evidence and the credibility of witnesses. *Crudup*, 341 Ark. 804, 20 S.W.3d 900. In reviewing the evidence in this matter, the Commission was entitled to compare and weigh the opinion of Dr. Jones against the opinion of Dr. Nix. Furthermore, Appellant admitted that she had been experiencing pain and numbness in her hands and elbows, accompanied by a loss of grip strength, for several months before the "spilled tea" incident," but never reported her problems as being work-related to her employer until *after* she learned from Dr. Jones that she suffered from a condition — carpal tunnel syndrome and tennis elbow — that would require treatment by a specialist and possibly surgical

intervention. When asked why she did not notify anyone at Con-Agra immediately about her problems, Appellant testified that she thought it was "just part of the job." And yet, when she filled out the forms at Dr. Jones's office, she "did put on there Blue Cross/Blue Shield, not work related." Based upon the record in this case, and after giving deference to the Commission on issues involving the weight of the evidence and the credibility of witnesses, I cannot say that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission.

For the above-stated reasons, I must respectfully dissent.