Mary (Noelker) FREEMAN *v.*
CON-AGRA FROZEN FOODS

CA 99-1313                                                    27 S.W.3d 762

Court of Appeals of Arkansas
Division IV
Opinion delivered May 31, 2000
[Substituted Opinion upon Grant of Rehearing
delivered October 4, 2000* ]

---

* BIRD and STROUD, JJ., would deny. *See* decision by Arkansas Supreme Court, delivered March 29, 2001.

*Mark E. Ford*, for appellant.

*William F. Smith*, for appellee.

JOHN B. ROBBINS, Chief Judge. In our original opinion in this appeal, *Freeman v. Con-Agra Frozen Foods*, 70 Ark. App.

306, 19 S.W.3d 43 (2000), we reversed the Workers' Compensation Commission's decision that denied appellant benefits. Appellee timely filed a petition for rehearing and argues that we erroneously evaluated the evidence and came to an erroneous conclusion. In light of two supreme court cases that were decided after we issued our original opinion, we conclude that appellee's petition is well founded. We have granted the petition for rehearing and reinstate the appeal. In this substituted opinion, we affirm the Commission.

The evidence presented by the parties revealed the following facts, and we reiterate them here. Appellant testified that she began working for appellee on November 27, 1995, assembling frozen dinner trays. She generally worked more than forty hours per week. Her duty on the moving production line was to place the correct portion of food into the frozen dinner tray, making certain that there was neither too much nor too little food in each triangle portion of the tray. Two to four employees worked each line, usually with two on each side of the line. In her estimation, she was responsible for filling approximately sixty-five dinners per minute. The employees rotated the duties of putting in a vegetable, an ice-cream scoop of rice, or the frozen meat. This was a job that required extensive use of her hands, wrists, and arms.

Her symptoms began about six months prior to leaving her employment, and she described the symptoms as aching and numbness in her hands and elbows accompanied by a loss of grip strength. The aching was severe enough to wake her at night. At that time, she was in her late forties. She admitted that she did not notify her employer of these problems until she left on November 21, 1997, because she thought that aching and pain was just "part of the job." On that date, she testified that before she reported to work, she was at home and, while wiping up tea that she had spilled on the kitchen counter, she experienced a shooting pain in her wrists. When she arrived at work that day, she reported to the nurse's station and requested that they wrap her wrists. After being on the job for about an hour, she could not work any longer due to the pain. She was sent, not to the company doctor, but to her family physician.

She consulted with her physician, Dr. Jones, and his notes indicated a patient history of these problems for the past two to three months with an increase in the last week or two. Nerve

conduction studies confirmed that she had bilateral carpal tunnel syndrome, worse on the left than the right. He diagnosed her with bilateral carpal tunnel syndrome and bilateral "tennis elbow." His notes dated November 25, 1997, stated "[t]his overuse syndrome type picture is consistent with the job description she gives me."

Appellant reported to her employer that these conditions were work-related after her diagnosis by Dr. Jones. Appellee contested the claim since appellant had not initially reported that her symptoms were related to her work. Appellant completed an application for employer-sponsored disability, and in those forms she indicated that her condition was work-related but that she was receiving no benefits. Appellant testified that the insurance coordinator at Con-Agra informed her not to list the injury as work-related, or she would not receive disability insurance benefits. In her visits for medical care, she assigned benefits under her group medical plan.

She was referred to Dr. Nix, a Little Rock orthopedic surgeon, who concurred in Dr. Jones's diagnosis. After unsuccessful conservative treatment, Dr. Nix performed carpal tunnel release on January 2, 1998. She continued to experience problems with the A-1 pulley on the right thumb, and Dr. Nix performed a release of the A-1 pulley on April 21, 1998. Along with her surgeries, appellant underwent a course of physical therapy to restore the use of her hands and elbows.

In response to a letter from appellant's counsel, Dr. Nix categorized appellant's problems as "usage related type injuries, often associated with repetitive motion and are most commonly seen in women." However, "whether this particular repetitive usage is associated with production line work or other outside activities, I cannot comment on with a reasonable degree of medical certainty. I expect your investigation could help clarify this." She was released to return to work on May 21, 1998, and continued in that employment until she found other work on October 12, 1998. Appellant denied engaging in any other rapid or repetitive activity and denied that she had any other injuries to her hands or arms before she developed carpal tunnel syndrome and tennis elbow.

Appellant sought benefits asserting that these conditions arose out of and in the course of her employment with appellee Con-Agra Frozen Foods. Appellant contended that because of her

overuse syndrome that developed over her two-year tenure as an assembly line employee, she had to discontinue working on November 21, 1997, was temporarily totally disabled until May 21, 1998, and was entitled to medical benefits for treatment of her conditions. Appellee contended that appellant's injuries were not causally related to her work and that her conditions were not proven to be related within a reasonable degree of medical certainty. The administrative law judge and the Commission concluded that these conditions did not arise out of her employment.

The Commission, which adopted the opinion of the ALJ, found that appellant failed to carry her burden of proof to demonstrate a causal connection between her employment and her injury because she did not indicate that her symptoms were work-related until after she had seen her family physician and realized that her treatment might include seeing a specialist and undergoing surgery. In addition, the Commission found it significant that appellant experienced a dramatic increase in symptoms at home while wiping her kitchen countertop, and it was only after that incident that she could no longer work. The Commission also noted that Dr. Nix declined to render an opinion on the nexus between her condition and her work, and Dr. Jones's notes, while stating that her conditions were "consistent with" her job duties, were barren of any report of the kitchen-cleaning incident. Therefore, the Commission denied benefits.

When we review a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the decision is supported by substantial evidence. *White v. Frolic Footwear*, 59 Ark. App. 12, 952 S.W.2d 190 (1997). Substantial evidence is that evidence a reasonable mind might accept as adequate to support a conclusion. *Mikel v. Engineered Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997). A decision of the Commission is reversed only if we are convinced that fair-minded persons using the same facts could not reach the conclusion reached by the Commission. *Id.* In our review, we recognize that this court defers to the Commission in determining the weight of the evidence and the credibility of the witnesses. *Id.* The issue is not whether we may have reached a different conclusion or whether the evidence might have supported a contrary finding. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914

S.W.2d 776 (1996). Where the Commission's denial of relief is based on the claimant's failure to prove entitlement to benefits by a preponderance of the evidence, the substantial-evidence standard of review requires affirmance if the Commission's opinion displays a substantial basis for the denial of relief. *Morelock v. Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995).

When a claimant requests benefits for an injury characterized by gradual onset, Ark. Code Ann. § 11-9-102(5)(A)(ii) (Repl. 1996) controls, defining "compensable injury" as follows:

> (5)(A)(ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by the time and place of occurrence, if the injury is:

> (a) Caused by rapid repetitive motion. Carpal tunnel syndrome is specifically categorized as a compensable injury falling within this definition[.]

■ ■ The supreme court has interpreted this statutory language such that a claimant is not required to prove that her condition was caused by rapid repetitive motion when the diagnosis is carpal tunnel syndrome. *Kildow v. Baldwin Piano and Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998). We recognize that epicondylitis, or "tennis elbow," has not been designated as a specifically recognized injury under "rapid repetitive motion." Consequently, appellant bears the burden of proving that rapid repetitive motion caused the bilateral tennis elbow.

■ ■ A claimant must also prove by a preponderance of the evidence that: (1) the injury arose out of and in the course of her employment; (2) the injury caused internal or external physical harm to the body which required medical services or resulted in disability or death; (3) the injury was a major cause of the disability or need for treatment; and (4) the injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(5). Medical opinions addressing compensability must be stated within a reasonable degree of medical certainty. Ark. Code Ann. § 11-9-102(16)(B) (Repl 1996).

We hold that there is a substantial basis for the denial of relief in this case. On June 8, 2000, the supreme court decided *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). This

decision narrowed the acceptable language that will support a causal connection between the injury and the work within a reasonable degree of medical certainty. Therein the supreme court reversed our decision, *Frances v. Gaylord Container Corp.*, 69 Ark. App. 26, 9 S.W.3d 550 (2000), and announced that:

> [E]xpert opinions based upon "could," "may," or "possibly" lack the definiteness required to meet the claimant's burden to prove *causation.* phasis added.] Accordingly, we modify and overrule the Court of Appeals' decision in *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998), to the extent that it may be read to permit expert opinion evidence under section 11-9-102(16)(B) to be satisfied by the use of terms such as "can," "could," "may," or "possibly."

> We also note that although *Atwood* seemingly rejects an expert's use of the word "could" when stating an opinion within a reasonable medical certainty, it validates an expert's use of the word "can." Given this inherent contradiction, ... we apply our limited overruling of *Atwood* retroactively.

The supreme court handed down yet another decision on this subject on July 7, 2000. *Crudup v. Regal Ware Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). In it the supreme court reversed our decision upon a grant of review. In *Crudup v. Regal Ware Inc.*, 69 Ark. App. 206, 11 S.W.3d 567 (2000), we had held that the following physician's opinion on causal connection had been stated within a reasonable degree of medical certainty:

> I cannot *definitively* state that the work he performs at Regal Ware is a primary cause of carpal tunnel syndrome, however ... it is *likely* this activity could precipitate, or aggravate, his symptoms.

*Id.*, 69 Ark. App. at 209. (Emphasis added.) In reversing our decision, the supreme court stated that this physician's opinion was nothing more than a statement of theoretical possibility and therefore lacked the requisite definiteness.

■ We recognize that the supreme court rendered an earlier opinion, *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999), which supported our first opinion in this case. Ms. VanWagner suffered an injury to her chest and breast implant, and the Commission found that she had proven a causal connection between her injury and her employment. The supporting evidence

was her testimony of what happened coupled with her doctor's notes that substantiated that the right implant was displaced and ruptured. The employer, Wal-Mart Stores, Inc., appealed, arguing that medical evidence was necessary not only to establish the existence of any injury, but also to establish that a work-related accident caused the injury. Therefore, Wal-Mart contended that objective medical evidence of causation is elemental to proper proof of a compensable injury. The supreme court disagreed, holding that objective medical evidence is necessary to establish the existence and extent of an injury but is not essential to establish the causal relationship between the injury and a work-related accident. The supreme court specifically adopted our reasoning in *Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997), and *Aeroquip, Inc. v. Tilley*, 59 Ark. App. 163, 954 S.W.2d 305 (1997), and stated:

> The plethora of possible causes for work-related injuries includes many that can be established by common-sense observation and deduction. To require medical proof of causation in every case appears out of line with the general policy of economy and efficiency contained within the workers' compensation law. To be sure, there will be circumstances where medical evidence will be necessary to establish that a particular injury resulted from a work-related incident but not in every case.

337 Ark. at 447. We agree with this analysis. However, we are bound to apply the most recent statement of the law as announced by our supreme court. *See, e.g., Alcoa v. Carlisle*, 67 Ark. App. 61, 992 S.W.2d 172 (1999); *Davis v. State*, 60 Ark. App. 179, 962 S.W.2d 815 (1998). Consequently, unless *VanWagner* was overruled by implication in *Frances* and *Crudup*, it appears that the present state of the law in this area could be summed up as follows: Medical evidence is not ordinarily required to prove causation, i.e., a connection between an injury and the claimant's employment (*VanWagner*), but if an unnecessary medical opinion is offered on that issue, the opinion must be stated within a reasonable degree of medical certainty. Qualifying words such as "could," "may," "possibly," and "likely" will cause the opinion to lack the requisite certainty and will defeat the claimant's claim.

■ Applying these mandates from our supreme court, we hold that appellant's family physician's opinion, wherein he opined that appellant's work was "consistent with" her injuries, does not

meet the requisite definiteness to prove a causal connection between the injury and the work. We need not address whether Ms. Freeman's testimony on the causation issue was credible.

Affirmed.

JENNINGS, GRIFFEN, and MEADS, JJ., agree.

BIRD and STROUD, JJ., dissent.

SAM BIRD, Judge, dissenting. I joined in the original decision of this court to reverse the Commission's denial of benefits to the appellant, and I respectfully dissent from the majority's decision to now grant appellee's petition for rehearing and to affirm the Commission's decision.

First, I believe that the two cases handed down by our supreme court on June 8, 2000, *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000), and July 7, 2000, *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000), are distinguishable and, therefore, are not authority for the case at bar.

In *Gaylord*, a workers' compensation claimant was seeking benefits for an injury to his back alleged to have occurred when he was struck in the left side by a scanner while he was clearing away paper from a broken paper machine. In its opinion, the supreme court noted that Frances's doctor, in a letter report relating to causation, stated that "the mechanism of the injury that [Frances] describes *could* produce a lumbar disc injury. The history given that he initially sustained back pain and then four weeks later had recurrent back and leg pain *could* be consistent with an injury to the disc initially...." The supreme court held that since the doctor opined only that Frances's work-related accident was the kind of event that "could" cause his resulting back condition, the doctor's opinion was not stated within a reasonable degree of medical certainty as required by Ark. Code Ann. § 11-9-102(16)(B)(Supp. 1999).

In *Crudup*, a claimant sought benefits for carpal tunnel injury in his right wrist, alleged to have been caused by his rapid-and-repetitive activities in packing cookware into boxes on an assembly line. A letter report from the Dr. Michael Moore stated:

I had a long discussion with Mr. Crudup regarding his medical condition as it related to work. He reports that he performs work which requires repetitive lifting and gripping. I cannot definitively state that the work he performs at Regal Ware is a primary cause of carpal tunnel syndrome, however, if Mr. Crudup does perform repetitive work, it is likely this activity could precipitate, or aggravate, his symptoms. Finally, if I could review Mr. Crudup's work requirements, it would be easier to determine if the carpal tunnel syndrome could be related to his work activity.

The supreme court affirmed a finding by the Commission that the doctor's opinion of the likelihood of a causal connection between the claimant's work and his carpal tunnel syndrome was not stated within a reasonable degree of medical certainty as required by section 11-9-102(16)(B)(Repl. 1996).

The case at bar is distinguishable because Doctor Jones's opinion as to a causal connection between Freeman's work activities at Con-Agra and her injuries did not contain equivocal expressions like "could," "may," or "possibly" that the supreme court held in *Gaylord, supra,* (overruling *Service Chevrolet v. Atwood,* 61 Ark. App. 190, 966 S.W.2d 909 (1998)), lacked the definiteness required to meet the claimant's burden to prove causation pursuant to section 11-9-102(16)(B). Unlike the doctors' opinions in *Gaylord* and *Crudup,* Dr. Jones's opinion was not that Freeman's carpal tunnel syndrome CTS *could* have been consistent, or *might* have been consistent, or *may* have been consistent, or *was possibly* consistent, or *likely could* have been consistent, with the conditions of her work. To the contrary, the clear and unequivocal opinion of Dr. Jones as to the existence of a causal connection between Freeman's injuries and her work activities, was that "[t]his overuse syndrome type picture *is consistent with* the job description she gives me."

Following the receipt of this opinion from Dr. Jones, Freeman was referred to Dr. Nix, who agreed with Dr. Jones's diagnosis of Freeman's injuries. In a letter to Freeman's lawyer, Dr. Nix described Freeman's conditions as "usage related type injuries, often associated with repetitive motion...." Dr. Nix then went on to state the obvious that, "whether this particular repetitive usage is associated with production like work or other outside activities, I cannot comment on with a reasonable degree of medical certainty. I expect your investigation could help clarify this." It is this unfortunate surplusage by Dr. Nix that the Commission has seized upon to

support its conclusion that no causal connection has been established between Freeman's injuries and the conditions of her work. This statement by Dr. Nix is not unlike Dr. Moore's suggestion in *Crudup, supra,* to the effect that he "could not definitely state that the work [Crudup] performs ... is a primary cause of carpal tunnel syndrome, [but that] if I could review Mr. Crudup's work requirements, it would be easier to determine if the carpal tunnel syndrome could be related to his work activity. These statements by Drs. Moore and Nix are exactly the type of qualified opinions one would expect to receive from an honest, objective doctor who is asked to express an opinion as to whether there is a causal connection between a medically diagnosed injury and a work activity that the doctor has not personally observed or with which he is not personally familiar. As the dissenting opinion observes in *Gaylord,* since "doctors generally are not present when an employee is injured, it is understandable that their opinions may be stated in less than certain terms." Every opinion expressed by a doctor is not a medical opinion. A doctor cannot be expected to express, to a reasonable degree of medical certainty, that there is a causal connection between an injury he has diagnosed and work conditions with which he is not personally familiar, and a doctor's refusal to do so is a credit to the ethics of his profession, not a failure to meet the burden of proof required by section 11-9-102(16)(B).

This brings me to the second reason for my dissent. With all due respect to the majority herein and to the supreme court in its *Gaylord* and *Crudup* decisions, I do not agree that section 11-9-102 can be interpreted to require that, as a condition of compensability, medical proof exists, to a reasonable degree of medical certainty, or otherwise, to establish a causal connection between one's injury and his or her employment.[1] As the majority notes, Freeman's eligibility to recover benefits under the Workers' Compensation Act for an injury alleged to be due for an injury characterized by gradual onset, section 11-9-102(5) controls. Under that section, "compensable injury" is defined as:

---

[1] In *Wal-Mart Stores, Inc. v. VanWagner,* 337 Ark. 443, 446, 990 S.W.2d 522, 524 (1999), the supreme court affirmed the court of appeals' holding that "the requirement that a compensable injury must be established by medical evidence supported by objective findings applies only to the existence and extent of the injury."

An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by the time and place of occurrence, if the injury is:

(a) Caused by rapid repetitive motion. Carpal tunnel syndrome is specifically categorized as a compensable injury falling within this definition[.]

As we have held before[2], a claimant seeking benefits for a gradual onset injury must prove by a preponderance of the evidence that: (1) the injury arose out of and in the course of his or her employment (Ark. Code Ann. § 11-9-102(5)(A)(I)(Repl. 1996)), (2) the injury caused internal or external physical harm to the body that required medical services or resulted in disability or death (Ark. Code Ann. § 11-9-102(5)(A)(ii)(Repl. 1996)), (3) the injury was a major cause of the disability or need for treatment (Ark. Code Ann. § 11-9-102(5)(E)(ii)(Repl. 1996)), and (4) the injury must be established by medical evidence supported by objective findings (Ark. Code Ann. § 11-9-102(5)(D)(Repl. 1996)).

Among these four requirements, the only mention of a requirement for medical evidence is contained in section 11-9-102(5)(D)(Repl. 1996), which only requires that medical evidence, supported by objective findings, be produced to establish the injury. In other words, if there is no objective medical evidence of injury, there is no injury that is compensable under the Workers' Compensation Act. This section requires medical evidence to establish the existence of an injury. It does not require that medical evidence also establish a causal connection between the work and the injury. While it is true that section 11-9-102(16)(B) requires that medical opinions addressing compensability be stated within a reasonable degree of medical certainty, there is no provision in the Workers' Compensation Act *requiring* that medical evidence be produced to establish a causal connection between the medically diagnosed injury and the employee's work activity. At the very most, section 11-9-102(16)(B) could be interpreted to mean that *when* medical opinions are relied upon to establish a causal connection between an injury and work conditions, such opinions must be stated within a reasonable degree of medical certainty. But there is nothing in the

---

[2] *Steveson v. Frolic Footwear*, 70 Ark. App. 383, 20 S.W.3d 413 (2000); *Lay v. United Parcel Serv.*, 58 Ark. App. 35, 944 S.W.2d 867 (1997).

act that can be construed to mean that medical opinions addressing compensability are the *only* evidence that can establish that causal connection.

Section 11-9-102(5)(A)(i) obviously requires proof of a causal connection between the injury and the employment (i.e., that the injury *arose out of and in the course of* employment), but there is no mention of a *requirement* for medical evidence to prove it.

Section 11-9-102(5)(A)(ii), while referring to causation, requires only that a claimant prove by a preponderance of the evidence that the injury *caused* internal or external physical harm that required medical services. While medical evidence may be necessary in many cases (but certainly not all of them) to establish the existence of internal or external physical harm, there is no requirement under this section that medical evidence be produced to establish that the injury caused the harm; nor is a medical opinion necessary to prove that the physical harm required medical services.

Finally, section 11-9-102(5)(E)(ii) makes no mention of the necessity for medical evidence to prove that an injury is the major cause of disability or need for treatment. No doubt, medical evidence could provide such proof; and in some instances, but not all, medical evidence might be the only way to establish a connection between the injury and its effect. But the statute does not require medical evidence in every instance to prove a causal connection between the injury and the disability or need for treatment.

In the case at bar, Con-Agra does not dispute Freeman's testimony: that she worked for two years on a moving assembly line where she assembled frozen food trays; that she worked more than forty hours per week; that her duty on the line was to place correct portions of food items, including frozen meat, into a dinner tray; that she filled approximately sixty-five dinner trays per minute; and that the job required extensive use of her hands, wrists, and arms. Con-Agra did not deny that Freeman suffers from CTS and "tennis elbow." Rather, it contested her claim on the basis that Freeman did not complain about her symptoms at their onset and that she did not contend that her injury was work related until after it had been diagnosed by her family physician.

Freeman was not required to prove that her CTS was caused by rapid and repetitive motion. She was required to prove only that her CTS was caused by conditions of her employment. *Kildow v. Baldwin Piano and Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998). In *Kildow*, the supreme court held that CTS was, by definition, a compensable injury that falls within the definition of rapid and repetitive motion.[3] There was no evidence that Freeman had engaged in any non-work related activity that might have caused her injury. To suggest, as the Commission does, that Freeman's bilateral CTS and bilateral tennis elbow could have been caused when she wiped up spilled tea from her kitchen counter is not only absurd but it ignores voluminous evidence to the contrary, including medical evidence that her injury is consistent with the conditions of her work. In his medical report, Dr. Jones stated that Freeman's "overuse syndrome" was consistent with the job description Freeman gave to him. There is no contention by Con-Agra that Freeman did not give a complete and accurate description of her job to Dr. Jones. The Commission chose to disregard Dr. Jones's opinion because it contained no reference to the incident Freeman's experience of pain in her wrist while wiping up spilled tea. However, Dr. Jones's characterization of Freeman's condition as an "overuse syndrome" belies any notion that Freemen's bilateral CTS and bilateral tennis elbow could have been caused by a single incident of wiping spilled tea from her counter-top. On the other hand, Dr. Nix, while agreeing with Dr. Jones that Freeman's conditions were "usage related type injuries, often associated with repetitive motion ...," cautiously avoided offering an opinion on causation, deferring instead to Freeman's attorney to "clarify" that issue through his investigation, obviously recognizing that it was not a medical decision.

As noted by the dissenting opinion in *Gaylord*, even though Ark. Code Ann. § 11-9-102(16)(B) requires a doctor's opinion to be stated within a reasonable degree of medical certainty, it does

---

[3] Of course, *Kildow* is not applicable to Freeman's "tennis elbow" because that condition is not included in Ark. Code Ann. § 11-9-102(5)(A)(ii)(a) as an injury categorized as a compensable injury falling within the definition of rapid and repetitive motion. However, since the majority affirms the Commission's decision that there was no medical opinion stated to a reasonable degree of medical certainty to establish a causal connection between any of Freeman's injuries and the conditions of her employment, and makes no distinction between the elements of proof required to prove compensability for Freeman's CTS and her bilateral "tennis elbow," that distinction will not be addressed in this dissenting opinion.

not require that the doctor's opinion must be stated in unequivocal terms. A doctor who has not personally witnessed the occurrence of an injury or personally viewed the work conditions that are claimed to have resulted in an injury cannot possibly be expected to express with absolute certainty whether an injury was caused by his patient's work. All doctors can be expected to do is express an opinion as to whether the injury he has diagnosed is consistent with the work history that has been provided to him. That opinion then becomes merely some of the evidence that is to be considered in determining whether there is a causal connection between the injury and the work.

The majority herein, and the supreme court in *Gaylord* and *Crudup, supra,* have imposed a requirement for establishing compensability under the Workers' Compensation Act that is not contained in the Act. It is an unreasonable requirement, if not an insurmountable one, to require workers' compensation claimants to induce a medical doctor to express, in reasonably certain medical terms, his opinion that there is a causal connection between a medically diagnosed injury and non-medical work conditions when the doctor is unqualified and, therefore, unwilling to express such an opinion. The reluctance of doctors to express opinions as to causation is exemplified by Dr. Nix's letter suggesting that Freeman's lawyer should develop evidence of such causation through his investigation, and Dr. Michael Moore's report in *Crudup* to the effect that further information about an injured employee's work conditions should be provided as a prerequisite to the expression of such an opinion. What these doctors are trying to say is that an opinion as to whether a particular work condition caused a particular injury is simply not a medical opinion.

I would deny the petition for rehearing, and I am authorized to state that Judge STROUD joins me in this dissenting opinion.