Willie HUTCHERSON *v.* STATE of Arkansas

CA CR 00-645                                    47 S.W.3d 267

Court of Appeals of Arkansas
Division I
Opinion delivered June 6, 2001

*Hampton, Larkowski & Benca*, by: *Jerry Larkowski*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Leslie Fisken*, Ass't Att'y Gen., for appellee.

Jоhn F. Stroud, Jr., Chief Judge. A Pulaski County Circuit Court jury found appellant, Willie Hutcherson, guilty of four counts of aggravated robbery and four counts of theft of property. He was sentenced to a total of 240 years' imprisonment in the Arkansas Department of Correction.

Hutcherson raises three arguments on appeal: (1) the evidence was insufficient to support his convictions for four counts of aggravated robbery and four counts of theft of property; (2) the trial court erred in denying his motion to suppress photo spreads shown to two of the victims as overly suggestive; and (3) the trial court erred in denying his motion to declare Ark. Code Ann. § 16-90-803(b)(4) and (a)(1) unconstitutional and by refusing to instruct the jury on the sentencing guidelines. We affirm.

The facts giving rise to appellant's convictions are as follows. On the night of April 2, 1999, Sally Rhinehold was robbed while working at a Conoco gas station on Baseline Road. At trial, Rhinehold identified appellant as the person who came into the store, shopped around for fifteen to twenty minutes until the other customers left the store, and then pulled a gun on her and demanded that she give him all of the money from her register. Rhinehold complied with the demand. Appellant then made her go to the store's restroom, where she stayed until she heard someone come into the store. Rhinehold testified that she had no doubt appellant was the person who robbed her because he was the same person who had given her a check a couple of days before and she had required proof of identification at that time.

On the morning of April 3, 1999, Cindy West was robbed as she was working at a Texaco gas station on Dixon Road. West testified that a man, whom she identified as appellant in a security videotape, a pretrial photo spread, and again at trial, attempted to pay for three dollars worth of gas with a credit or debit card, but that the card was declined. She said that although she did not notice the first name on the card, the last name was either Hutchinson or Hutcherson. Appellant left and then came back in and asked for cigarettes. West turned to get the cigarettes, and when she turned back around, appellant was standing in front of her with a gun. Appellant told her to give him all of the money, and West did as he demanded. Appellant then told West to go to the back of the store. As she was complying with his order, another customer pulled into the station for gas; appellant then walked out the door and left.

On the night of April 3, 1999, Hyonsuk Fusaro was working at a Texaco station on Ninth Street when she was robbed by a person she identified as appellant both in a pretrial photo spread and at trial. Fusaro testified that she and appellant were alone in the store when he pointed a gun at her and told her to put all of the money in a brown bag. He also made her put her three rings in the bag. He made Fusaro lie down on the restroom floor and asked her to take her clothes off; when she refused, appellant left. Fusaro came out of the bathroom when she heard another customer in the store.

On the afternoon of April 5, 1999, Michael Vickery was robbed while working at the Dixon Road Wine & Spirits liquor store. Vickery testified that a man came in and asked the price of a bottle of liquor, he turned around to check the price, and when he turned back around, the man was pointing a gun at him. The man told him that he wanted all of the money out of the register; Vickery complied. He also demanded all of Vickery's jewelry, which consisted of two rings and a bracelet. The man made Vickery go into the cooler and lie down on the floor, but the door would not lock, so he put Vickery in the restroom. Vickery locked himself inside, coming out when he heard the store door open. Vickery went outside, saw appellant through a car window, and fired four shots at the car. Although Vickery could not identify appellant in a photo spread, he identified appellant at trial as the person who had robbed him. Timothy Hibbs, an investigator with the Pulaski County Sheriff's Office, testified that at the time he was arrested, appellant was wearing a ring and bracelet that closely matched the description of the items taken from Michael Vickery in the robbery at Dixon Road Wine and Spirits. At trial, Vickery identified the ring and bracelet taken from appellant as the jewelry that was taken from him during the robbery.

Nihissa Dixon testified that she had driven appellant to the liquor store, appellant had gone into the store, and when appellant returned, shots were being fired at the car. Dixon testified that appellant told her that he had robbed the store with his gun, although she said that she never saw a gun. Sergeant Jim Dixon testified that after appellant had been read his *Miranda* rights, he confessed that he had robbed Dixon Wine & Spirits in order to repay a drug debt.

■■ Hutcherson's first argument is that there was insufficient evidence to sustain the convictions. Directed-verdict motions are treated as challenges to the sufficiency of the evidence. *Blockman v.*

*State*, 69 Ark. App. 192, 11 S.W.3d 562 (2000). When the sufficiency of the evidence is challenged, the appellate court considers only evidence that supports the guilty verdict, and the test is whether there is substantial evidence to support the verdict. *Id.* Substantial evidence is evidence of such certainty and precision as to compel a conclusion one way or another. *Id.*

Appellant's argument is not preserved for appeal. At the close of the State's evidence, Hutcherson's attorney stated, "I have a motion for directed verdict based on insufficiency of the evidence. I would ask the Court to direct a verdict in our favor on all counts in that there is not sufficient evidence for this to go forward to a jury." After appellant presented his case and rested, his attorney said, "I would also renew my motion for directed verdict based on insufficiency of the evidence pursuant to Arkansas law at this point at the close of all evidence."

Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides, "In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor." Subsection (c) of that rule provides, in pertinent part, "A motion for directed verdict . . . must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense."

■ Hutcherson's motions for directed verdict fail to specify the respect in which the evidence was deficient. Instead, they are simply general motions stating that the evidence is insufficient, which is not adequate to comply with the requirements of Rule 33.1. Nevertheless, if we were to address appellant's sufficiency arguments, we would find the evidence sufficient to support all of appellant's convictions.

Hutcherson's next contention of error is the trial court's denial of his motion to suppress the photo spreads shown to crime victims Cindy West and Hyonsuk Fusaro. He argues that the photo spreads were unduly suggestive because in the one shown to West, his was the only head in which the scalp was cut off in the picture, and in the one shown to Fusaro, he was the only person wearing a necklace.

■ In order for a pretrial identification to violate the Due Process Clause, its elements must be so suggestive as to make it all but inevitable that the victim will identify one person as the criminal. *Bishop v. State*, 310 Ark. 479, 839 S.W.2d 6 (1992).

■ Hutcherson's argument on appeal concerning the photo spread shown to West was not made to the trial court and is being made for the first time on appeal. The objection made to the trial court concerning the photo spread shown to West was that it was unduly suggestive because the background of the other pictures was different, not because the top of appellant's head was cut off in the photo. Our law is well established that arguments not raised at trial will not be addressed for the first time on appeal, and that parties cannot change the grounds for an objection on appeal, but are bound on appeal by the scope and nature of the objections and arguments presented at trial. *Nix v. State*, 54 Ark. App. 302, 925 S.W.2d 802 (1996). Therefore, Hutcherson's argument as it pertains to the photo spread shown to West was not preserved for appeal.

■ Nevertheless, even if we were to reach the merits of the argument, we would affirm. We do not reverse a trial court's ruling on the admissibility of identification evidence unless it is clearly erroneous, and do not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification. *Moore v. State*, 304 Ark. 558, 803 S.W.2d 553 (1991). A review of the photo spread shown to West reveals that all of the photos were close-ups of young African-American men with mustaches and similar facial features. West testified that it took her less than thirty seconds to identify appellant in the photo spread as the person who had robbed her, and she was positive of his identity. She further stated that no one suggested who she should select from the photos. This testimony was corroborated by both of the police officers who showed West the photo spread. There was nothing unduly suggestive in the photo spread shown to West, and the trial court did not err in allowing this pretrial identification into evidence.

As for the photo spread shown to Fusaro, Hutcherson contends that the photo spread was unduly suggestive because he was the only person who was wearing a necklace. Again, all of the persons in the photo spread were young, African-American men with similar facial features. Fusaro testified that she was able to observe appellant at close range, she was positive in her identification of him, and the fact that he was wearing a necklace in the photo spread did not suggest to her that he was the person who had

robbed her. The photo spread shown to Fusaro was not unduly suggestive, and the trial court did not err in admitting the pretrial identification into evidence.

Hutcherson's last point on appeal is that the trial court erred by not ruling Ark. Code Ann. § 16-90-803(a)(1) and (b)(4) (Supp. 1999), which establishes presumptive sentencing standards, unconstitutional as violative of the Due Process and Equal Protection Clauses. Subsection (a)(1) of this statute provides:

> When a person charged with a felony enters a plea of guilty or no contest, enters a negotiated plea, or is found guilty in a trial before the judge, or when the trial judge is authorized to fix punishment following an adjudication of guilt by a jury pursuant to § 5-4-103, sentencing shall follow the procedures provided in this chapter.

Subsection (b)(4) of this statute provides, "This section shall not apply when a jury has recommended a sentence to the trial judge."

Appellant contends that this statute creates two classes of defendants, one whose punishment is determined by a jury and one whose punishment is determined by the trial judge, and encourages defendants to waive their right to a jury trial. However, a trial judge is not required to impose the presumptive sentence in Ark. Code Ann. § 16-90-803; subsection (a)(2)(A) of that section clearly provides trial judges with the authority to depart from the presumptive sentence pursuant to Ark. Code Ann. § 16-90-804 (Supp. 1999). Furthermore, our supreme court held in *Pickett v. State*, 321 Ark. 224, 226, 902 S.W.2d 208, 209 (1995), "The sentencing guidelines do not burden the fundamental right to a jury trial because the statutory minimum and maximum ranges for a sentence always override the presumptive sentences." The trial court did not err in denying appellant's request to declare these statutory provisions unconstitutional.

Affirmed.

CRABTREE, J., agrees.

HART, J., concurs.

JOSEPHINE LINKER HART, Judge, concurring. Alexander Hamilton rightly argued that "[t]o avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and

point out their duty in every particular case that comes before them. . . ." *The Federalist* No. 78 (June 1788). After all, a judge, and by implication a court, is "not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness." Benjamin N. Cardozo, *The Nature of the Judicial Process* 141 (1921). Accordingly, we, the court of appeals, must adhere to the true holdings of our supreme court when that court has made an unequivocal pronouncement concerning the relevant law. *See Freeman v. Con-Agra Frozen Foods*, 70 Ark. App. 306, 27 S.W.3d 762 (2000), *rev'd on other grounds*, 344 Ark. 296, 40 S.W.3d 760 (2001). However, the law is ever-changing, and, in my view, these restraints do not and should not prevent a judge from interjecting respectful commentary in order to shape the developing law. Inasmuch as I conclude that the trial court's actions were consistent with the present law, I cannot agree with appellant that this matter should be reversed. However, because I believe that the precedent by which we are bound is not consistent with the sense of justice or social welfare, I respectfully offer this concurrence.

I write separately to express my opinion concerning our sentencing guidelines that are available only to those defendants who either enter pleas of guilty or no contest or are permitted to have a bench trial, Ark. R. Crim. P. 31.1, and the effect these guidelines have on a defendant's rights as guaranteed by the Sixth Amendment. As explained in the majority opinion, appellant challenged the constitutionality of Ark. Code Ann. § 16-90-803 (Supp. 1999), which establishes the method for determining the presumptive sentences for criminal defendants whose pleas of guilty are accepted by the trial court. Specifically, appellant cites *United States v. Jackson*, 390 U.S. 570 (1968), and argues that the aforementioned statute is unconstitutional because it encourages him to waive his fundamental right to a trial by jury as guaranteed by the Sixth Amendment and made applicable to the respective states by the Fourteenth Amendment.

The State counters by citing *Pickett v. State*, 321 Ark. 224, 226, 902 S.W.2d 208, 209 (1995), in which our supreme court held that "[t]he sentencing guidelines do not burden the fundamental right to a jury trial. . . ." Although the State is correct that in this case and commensurate with the law in its current form the trial court should be affirmed, this case, nonetheless, reveals a number of disturbing facets in the law that should not go unaddressed.

The genesis of the sentencing guidelines for those criminal defendants who enter pleas of either guilty or *nolo contendere* is Act

532 of 1993, which is currently codified at Ark. Code Ann. § 16-90-803. In Section 1(B) of the Act, the Arkansas General Assembly stated that "the purpose of establishing rational and consistent sentencing standards is to seek to ensure that sanctions imposed following conviction are proportional to the seriousness of the offense of conviction and the extent of the offender's criminal history. . . ." These sentences, of course, are generally less severe than the various sentences that the General Assembly has sanctioned for the various crimes enumerated throughout the criminal code. For example, in this case, appellant's sentence under the sentencing guidelines would have been twenty-two years' imprisonment; however, his sentence under the criminal code was 240 years' imprisonment. To state this sobering fact is to expose the fallacy in the law.

Accordingly, these presumably "proportional" sentences are available only to those criminal defendants who are found guilty by some means other than a jury. *See* Ark. Code Ann. § 16-90-803(b)(4). Therefore, it would be logical to conclude that criminal defendants would endeavor to have their cases disposed of by some means other than a Sixth Amendment-sanctioned jury trial.

The Sixth Amendment provides, *inter alia*, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the state. . . ." This constitutional right can be waived, *Schick v. United States*, 195 U.S. 65 (1904); however, it is permissible for the government to impose a rule that this waiver be subject to the approval of both the government and trial court, *Singer v. United States*, 380 U.S. 24 (1965). Commensurate with that authority, Arkansas has adopted Ark. R. Crim. P. 31.1, which provides that "[n]o defendant in any criminal cause may waive a trial by jury unless the waiver is assented to by the prosecuting attorney. . . ." Thus, a defendant does not have an absolute right to elect a non-jury trial even if his action of waiving a jury trial was guided by his attempt to obtain the benefits of the sentencing guidelines.

Accordingly, the government, for apparently any reason, can deny a defendant's request for a non-jury trial and have a criminal defendant subjected to a potential sentence that is something other than the "proportional" sentence endorsed by Act 532. Stated differently, Ark. R. Crim. P. 31.1, together with Act 532, operates to ensure a dual criminal-justice system that provides unfettered discretion to the government to select those criminal defendants who should be exposed to greater punishments and those defendants who should be exposed to lesser punishments.

While I agree that it is inevitable that in a system that encourages negotiated pleas, a criminal defendant will be faced with the possibility of less severe punishment in consideration for a waiver of a constitutional right to a jury trial, *Corbitt v. New Jersey*, 439 U.S. 212, 220-221 (1978), I see no need to codify two different types of sentencing schemes for the State to successfully negotiate a plea bargain. In fact, to do so unnecessarily invites legal challenges and appears strange. After all, if the sentence given to a criminal defendant who negotiated a plea bargain or is found guilty by a trial judge is "proportional," does the sentence for the criminal defendant who is found guilty by a jury lack proportion?

Furthermore, could this doublespeak, which is so apparent when one views our sentencing laws as a whole, be clarified if the jury was made aware of the more "proportional" sentence? After all, would the policy reasons that undergird Act 532 — proportionality and uniformity — also be furthered by the jury's awareness of the sentencing guidelines? What is the compelling reason for the principle that a judge, who is acting in the capacity of a finder-of-fact by determining a sentence, should be more informed about what the legislature considers as being a "proportional" sentence than a jury when undertaking precisely the same task? If there is no significant reason, then is it not fair to say that there is no rational basis for treating criminal defendants who either negotiate a settlement or are allowed to have their case tried before the trial judge differently from those defendants who are forced to have their case tried before a jury? Regretfully, that avenue has been successfully blocked by *Pickett*, 321 Ark. at 226, 902 S.W.2d at 209, which in effect stated that the defendant in that case was not entitled to the "proportional" sentence "because the statutory minimum [was] ten years, and a trial court should not give an instruction that incorrectly states the law."

In any event, the current state of the law simply does not permit this court to reverse the jury's sentence. The jury sentenced a person commensurate with the laws that they undoubtedly thought expressed the General Assembly's assessment as to what would be a proper punishment without knowing that, in fact, their legislature had determined that another sentence would be more "proportional." This legally-sanctioned process will deprive individuals of personal liberties and can result in a vast difference in the sentence imposed by the jury and the court.

Justice Cardozo opined:

I think that adherence to precedent should be the rule and not the exception. . . . [However,] when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment.

Cardozo, *supra* at 149-150. Here, the *Pickett* principle has been tested, and inconsistencies with simple justice and social welfare are plain. However, we are bound by that principle, and, accordingly, I concur.