Eugene FIELDS *v.* STATE of Arkansas

CA CR 02-319 101 S.W.3d 849

Court of Appeals of Arkansas
Division II
Opinion delivered April 2, 2003

[Petition for rehearing denied April 30, 2003.]

*Fields, Tabor, Langston & Shue, P.L.L.C.*, by: *Daniel Shue*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

Aɴᴅʀᴇᴇ Lᴀʏᴛᴏɴ Rᴏᴀғ, Judge. Appellant Eugene Fields was convicted by a jury of driving while intoxicated, fourth offense, for which he was sentenced to six years' imprisonment and fined $5000. On appeal, Fields argues that the trial court erred by permitting the State to: (1) use a prior unsworn statement without complying with the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et. seq.*, by failing to prove prior consent by one party to an intercepted telephone conversation; (2) impeach a defense witness with a prior unsworn statement; (3) argue hypothetical court rulings during closing

argument; (4) argue that the burden of proof shifted to the appellant during closing argument; (5) provide the certified judgments to the jury in the punishment phase of the trial. Fields has failed to preserve his second, third, and fourth points for appellate review, and we conclude that his first and fifth points lack merit. Consequently, we affirm.

On November 15, 2000, Fields was arrested and charged with driving while intoxicated, fourth offense, after he was involved in an accident with his vehicle. Fields admitted that he was intoxicated, and the primary issue at the trial was whether Fields was the driver of the vehicle or a passenger.

Charles Taber, who worked for an industrial plant near the scene of the accident, testified as a witness for the State. On the evening of November 15, 2000, Taber saw a truck miss a curve in the road behind the plant and go off the road, hitting a park sign, a fence, and a tin shed. Taber called his supervisor and headed toward the truck. When he arrived at the truck, Taber testified that the truck was still running and that there was a man behind the steering wheel. Taber stated that the man got out of the truck and appeared to be disoriented. Taber testified that he did not see anyone else get out of the vehicle. When Taber asked the driver if he was hurt, the driver stated that he was not and began walking down the road, away from the accident. According to Taber, the driver was staggering and smelled of alcohol. Taber identified Fields as the driver of the vehicle.

Sonny Cameron, a security guard at the plant, testified that he was in the security office when he heard a loud crash. He went looking for the noise and discovered the truck on the other side of the back parking lot. Cameron testified that he talked to Fields and that Fields told him that he was not driving the truck, but that one of his friends that was visiting him had been driving. Cameron tried to convince Fields to go back to his truck, but Fields then took off running and a police officer caught him several blocks away.

Van Buren Police Officer Lance Dixon testified that he was called to investigate an accident possibly involving an intoxicated driver. When he arrived at the scene, Dixon encountered the plant security officer, who told him that the driver of the vehicle

had taken off. Dixon drove around the block and found Fields staggering down an alley. According to Dixon, Fields stated that he was not driving and that a friend named "Billy Billy" was driving, but Fields could not answer any questions about who or where Billy Billy was. Dixon testified that he gave Fields several field-sobriety tests, all of which he failed. Dixon then arrested Fields and took him to the detention center, where Fields refused a blood-alcohol test. Dixon testified that while he and another officer were fingerprinting Fields, he stated that he "was just taking Billy home." Deputy John McAllister, who was present when Fields was fingerprinted, also testified that Fields stated that he was just taking Billy home.

James Williams Cox testified as a witness for the defense. Cox stated that he was a longtime friend of Fields and that Fields called him Billy Cox. Cox testified that he lived in Texas, but that he was visiting in Arkansas on November 15, 2000, and that he went by Fields's house at approximately 8:00 p.m. and found Fields and another man by the name of Benny in the garage. Cox testified that they had been drinking all afternoon. Cox stated that Fields wanted him to drive Benny home because he had ridden his bike to the house. Cox testified that he drove Fields's truck, with Benny and Fields as passengers. According to Cox, they had dropped Benny off and were going back to Fields's house when he ran the truck off of the road because of problems with the steering column, hitting the sign, fence, and shed. When he was not able to back the truck off of the fence, Cox testified that he left to try and find Benny to help. Cox stated that he never found Benny and that when he returned to the scene, the truck was gone and no one was there. Assuming that Fields had the truck towed, Cox testified that he walked back to Fields's house and then drove back to Texas. Cox testified that he first heard that Fields was arrested a few days later, when Fields called him.

Fields testified that he and his friend, Benny Billy, had been drinking that day, so he asked Cox to drive Benny home. Fields stated that he had been having problems with his steering mechanism in the truck. After the accident, Fields testified that he walked off to try and find a phone to call a wrecker. When he was arrested by Officer Dixon, Fields testified that he continually told him that his friend, Billy, was driving, but that Dixon did not ask

any other questions about Billy. When he stated to the officers that he was just taking Billy home, Fields testified that he meant that he was taking Benny Billy home, but not that he was driving.

Fields first argues that the trial court erred by permitting the State to use a prior unsworn statement without complying with the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §2510, *et. seq*. During the direct examination of Cox, he testified that he had given a statement to the deputy prosecutor in the case over the telephone. Although Cox stated that he was fairly truthful during that conversation, he also testified that he was not "exactly candid" on every issue that was discussed. On cross-examination, the prosecutor questioned Cox, without objection, as to the accuracy of several of the statements made during the phone conversation. After Cox testified that he went to Lee Creek Park to look for Benny immediately after the accident, he was asked whether he remembered telling the prosecutor over the phone that he had left the scene after the accident and walked back to Fields's house. Cox testified that he did not remember making that statement and denied that the statement was made. The prosecutor, who was apparently reading from a transcript of the phone conversation, questioned Cox as to whether he had been asked on the phone where he went after the accident and as to what his response was at that time. Fields objected, and the following conversation occurred during a sidebar conference:

> DEFENSE COUNSEL: "I'm gonna ask that he quit waving this question and ask what he's got in front of the jury."
> STATE: "I'll play the tape for them."
> DEFENSE COUNSEL: "No you're not gonna play the tape, it's illegally made."
> STATE: "It's not illegal."
> DEFENSE COUNSEL: "Yes it is. Are you gonna testify that one consented and disqualify yourself as an attorney in this case?"
> STATE: "As long as one person can testify . . ."
> DEFENSE COUNSEL: ". . . but you're gonna have to testify you consented to it, you're not a witness in this case."
> TRIAL COURT: "Let's not wave it around. I'm gonna permit him to cross-examine."

The prosecutor proceeded to ask Cox if he remembered his response to the question of where he went after the accident, and

Cox testified that he did not specifically remember. The prosecutor then started to read Cox's response from the transcript, and Fields objected again, stating:

> DEFENSE COUNSEL: "Judge, he is standing there holding what is obviously a transcript reading from it, and I object to that."
>
> TRIAL COURT: "On the basis of what?"
>
> DEFENSE COUNSEL: "On the basis he's demonstrating to the jury that he has got a transcript of this conversation."
>
> TRIAL COURT: "Well if he has no problem with it . . ."
>
> DEFENSE COUNSEL: "I've got a problem with that."
>
> STATE: "It's impeachment testimony."
>
> DEFENSE COUNSEL: "You've got, you've got, he has . . ."
>
> TRIAL COURT: ". . .what is it about it that you're objecting to?"
>
> DEFENSE COUNSEL: "He's making the jury believe he's got a transcript of his conversation."
>
> STATE: "I do, I do have a copy and it's on the tape."
>
> DEFENSE COUNSEL: "Well it's not, it's an illegal tape."
>
> STATE: "No it's not, as long as one party knows it's recorded."
>
> DEFENSE COUNSEL: "Is he gonna get on the stand and testify he consented to it?"
>
> STATE: "As long as one party know it's recorded."
>
> TRIAL COURT: "Listen, lay that on the podium and ask him whatever you want."

Next, during the re-cross-examination of Cox, the prosecutor questioned him as to whether he knew that he was talking to a deputy prosecutor on the phone and whether he knew that the conversation was being recorded. Cox testified that he did not know the prosecutor was recording the conversation. Fields then moved for a mistrial, arguing that this was the first time that the recording was mentioned in front of the jury and that it was improper to state to the jury that there was a recording made of the phone conversation. The State replied that it was clearly proper impeachment testimony, and the trial court overruled Fields's motion.

██ Fields now argues on appeal that the trial court erred in allowing the State to disclose the statements Cox made during the telephone conversation without showing that one party consented to the conversation being recorded, in violation of 18 U.S.C.A. § 2511 (West 2000). The State contends that this argument is not preserved for our review because Fields failed to object at the first opportunity or on the same basis that he now argues on appeal.

We find that this argument is properly preserved. Although the State initially questioned Cox as to his statements made during the phone conversation without objection, it was not until it was apparent that the State was referring to a transcript of the conversation that Fields objected on the basis that the recording was illegal. Fields continued to object, arguing that the State could not prove consent, and then moved for a mistrial, when the fact that the conversation was recorded was mentioned in front of the jury. Even though Fields did not mention the exact statute that he now argues was violated, his objections were sufficient to timely apprise the trial court of the particular error alleged, which is all that is required to preserve an argument for appeal. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1999).

Nevertheless, we find that there is no merit to Fields's argument that the recording was prohibited pursuant to 18 U.S.C.A. § 2511. The State argues that Fields does not have standing to challenge the recording of the phone conversation because he is not an aggrieved party. The State also argues that it was not unlawful to merely use the transcript for impeachment, where it was not admitted into evidence. However, it is not necessary to decide these issues, as the recording was not prohibited under the plain language of section . Section provides that it is unlawful to intentionally intercept, disclose, or use the contents of any wire, oral, or electronic communication in violation of this statute. However, section 2511(2)(c) states that "it shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." Similarly, section 2511(2)(d) states that it is not unlawful for a person who is not acting under color of law to intercept the communication where that person is a party to the conversation or has given his consent to the interception.

 Cox testified that when the prosecutor, Marc McCune, called him, he was busy so he later returned McCune's phone call. According to Cox's testimony, McCune identified himself as a deputy prosecutor and Cox was aware that he was calling the prosecutor's office when he returned McCune's call. Cox further testified that he would assume that any conversation a person has with a police officer or other official investigating a case would be

recorded. McCune then asked Cox, "You just didn't know I was recording the phone call, did you?" Cox replied that he did not. Although Fields argues that it was not shown that McCune consented to the recording because he did not testify at the trial, McCune's consent can be inferred from Cox's testimony. Also, it can be inferred from this testimony that McCune was a party to the communication. Because it is not unlawful to intercept an oral communication where such person is either a party to the conversation or consents to the interception, Fields's argument on this point has no merit.

■ For his second point on appeal, Fields argues that the trial court erred in permitting the State to impeach a defense witness with a prior unsworn statement. Fields asserts that the State was allowed to improperly impeach Cox by reference to the prior telephone conversation on at least six occasions. However, as the State argues, Fields's argument is not preserved for our review because he at no time objected on this basis during the trial. While Fields did object to the use of the transcript based upon the lack of consent to the phone conversation being recorded, he did not argue that the State's impeachment was improper under Ark. R. Evid. 613, as he now argues on appeal. In order to preserve an evidentiary challenge for appellate review, a party must object at the first opportunity. *Brooks v. State*, 76 Ark. App. 164, 61 S.W.3d 916 (2001). In addition, a party may not change the basis for an objection on appeal, but is bound by the nature and scope of the objection made at trial. *Hutcherson v. State*, 74 Ark. App. 72, 47 S.W.3d 267 (2001). Because Fields did not raise this argument to the trial court, we need not address the merits of his claim.

Fields argues in his third point on appeal that the trial court erred by permitting the State to argue hypothetical court rulings during closing argument. During his closing argument, Fields argued that the State failed to call two witnesses who could have potentially resolved the dispute about whether he was driving the truck that night. The State then responded in its rebuttal argument that Fields would have objected on hearsay grounds if the State had called one of those witnesses. Fields objected, stating that that was not proper argument in this case. The trial court overruled the objection, and the State then repeated that it would be hearsay. Fields objected again and stated that "we're gonna have to make a better record on that." The trial court then

admonished the jury that the statements of the attorneys were not evidence and that they should base their decision on what they recall the evidence to be.

■ Fields contends that the argument by the State was improper because it was beyond the record and prejudicial. He asserts that the trial court's rulings denied him the opportunity to emphasize that the burden of proof was on the State. The State contends that this argument is not preserved because Fields failed to state these grounds for his objection to the trial court. In order to preserve for appeal an argument as to comments made during closing argument, the objection must be specific enough that the trial court is apprised of the particular error alleged, and the party may not change the grounds for his objection on appeal. *Cobbs v. State*, 292 Ark. 188, 728 S.W.2d 957 (1987); *Samples v. State*, 50 Ark. App. 163, 902 S.W.2d 257 (1995). Because Fields failed to specify the grounds for his objection to the trial court, his argument is not preserved for appellate review.

■ For his fourth point on appeal, Fields contends that the trial court erred by permitting the State to argue that the burden of proof shifted to the appellant during closing argument. During the State's rebuttal argument, the following statements were made by the prosecutor: "You heard the question of him. He talked to Ron Fields (Fields's prior defense counsel), Charles Taber did, he talked to myself, and he got on the stand today and testified. There wasn't any impeachment, there wasn't any, well, don't you remember saying this or now you're saying that." Fields objected, stating that the prosecutor was arguing that Ron Fields should have testified, when the prosecutor was aware that Mr. Fields now works for the federal government and could not be called as a witness. The trial court overruled Fields's objection, and the State continued its closing argument and stated that there were no prior inconsistent statements by Taber and that it was "pretty clear what happened here." Fields now contends that this argument shifted the burden of proof to him and was a comment on his failure to produce evidence. However, Fields did not make this argument below, and thus, this argument also is not preserved for our review. *See Samples v. State, supra* (where the defendant argued that the State's closing argument improperly shifted the burden of proof to the defendant, but the court held that it was not preserved for appeal because the defendant did not object on that basis at trial).

Fields argues for his fifth point on appeal that the trial court erred in permitting the State to provide the certified judgments to the jury in the punishment phase of the trial. During the sentencing phase, the State introduced evidence of three prior DWI convictions by Fields. The trial court then informed the jury that there were three different convictions and admitted the certified judgments into evidence. The trial court asked the attorneys if anyone had a problem with the convictions being provided to the jury. Although Fields initially stated that he did not have a problem with that, he then objected after a discussion with the trial court. Fields argued that the judgments should not go to the jury room, as the trial court had "read those convictions and anointed those convictions from the bench."

As the State asserts, Fields does not cite any authority for his argument that the jury should not have received certified copies of his prior DWI convictions. An argument that is unsupported by convincing argument or citation to relevant authority need not be addressed on appeal. *Sanders v. State*, 76 Ark. App. 104, 61 S.W.3d 871 (2001). Furthermore, the fact of prior DWI convictions is an element of the crime of DWI, fourth offense, and is to be determined by the jury. *Hodges v. State*, 27 Ark. App. 93, 766 S.W.2d 619 (1989). Although the trial court must determine the admissibility of evidence of the prior convictions, it is up to the jury to determine that the evidence establishes that element of the offense. *Id.* Thus, it was proper for the trial court to have provided copies of the prior convictions to the jury for their examination. Fields also argues that there was incorrect information contained in the judgments of the prior convictions; however, he did not object on this basis below, and thus, his argument is not preserved for appeal. *Hutcherson v. State, supra.* We also note that Fields attempts to argue in his reply brief that the trial court erred in informing the jury that he had three prior convictions and in reading from those convictions, because this had the effect of a binding instruction to the jury. This court does not address arguments raised for the first time in an appellant's reply brief. *Camp v. State*, 66 Ark. App. 134, 991 S.W.2d 611 (1999). As there is no merit to any of Fields's arguments on appeal, we affirm.

Affirmed.

STROUD, C.J., and GRIFFEN, J., agree.